[No. 58247-5.  En Banc.  July 23, 1992.]

*In the Matter of the Marriage of* DONNA L. KRAFT, *Petitioner, and* BRYCE A. KRAFT, *Respondent.*

*Chris A. Montgomery,* for petitioner.

*Salina, Sanger & Gauper,* by *Allen M. Gauper,* for respondent.

GUY, J. — The issue here presented is whether the trial court properly applied *Mansell v. Mansell,* 490 U.S. 581, 104 L. Ed. 2d 675, 109 S. Ct. 2023 (1989) in its distribution of assets in the dissolution decree. We conclude the trial court improperly considered the husband's military disability retirement pay as an asset of the community. Accordingly, we affirm the Court of Appeals and reverse and remand to the trial court for reconsideration of the property distribution in accordance with this opinion.

### FACTS

Bryce and Donna Kraft were married on September 23, 1967. They have two children, Troy and Karen, who were 17 and 13 years of age, respectively, at the time their parents separated on March 20, 1988. Troy and Karen remained with Mrs. Kraft at the parties' Colville residence after the separation. Mr. Kraft moved into a hunting cabin without water, electricity, or telephone.

Mrs. Kraft has a master's degree in counseling. At the time of trial she was working as an alcohol and drug abuse counselor and earning approximately $1,700 net per month.

Mr. Kraft is a retired military officer, having a combined service of 21 years at the time of retirement. During a portion of his service, Mr. Kraft was in Vietnam flying helicopters. He sustained injuries while serving in Vietnam, including bullet wounds and hearing loss. The Veterans Administration (VA) rated Mr. Kraft as being 50 percent disabled. Besides his military background, Mr. Kraft has a

bachelor's degree in elementary education and has a certificate to teach. He also has a master's degree in counseling.

Mr. Kraft's employment, as presented to the trial court, was as caretaker for an elderly man. In that capacity, he was earning at the time of trial approximately $1,000 per month. Because of the tenuous nature of this employment, the trial court found that Mr. Kraft's average net income from his caretaker job was $500 per month. Mr. Kraft also receives military benefits of $1,317 per month based on his 21 years in the service. He was married to Mrs. Kraft during 14 of those 21 years. The parties stipulated that one-half of Mr. Kraft's monthly military benefits represents disability pay.

The trial court awarded to Mr. Kraft his individual retirement account (IRA) worth $9,000, a tractor worth $800, a 1976 Mercedes automobile worth $2,500, his tools worth $1,000, his guns worth $1,000, and various items not valued. As for the parties' debts, the court ordered Mr. Kraft to be responsible for repaying the VA for his disability overpayment, which the court estimated at approximately $21,000 when he began repaying it in 1987. The court also ordered Mr. Kraft to repay one-half of the parties' $3,500 debt to their son and one-half of their $1,200 debt to their daughter. The court ordered Mr. Kraft to pay $300 per month to Mrs. Kraft as child support for Karen until Karen reaches 18 years of age (which will occur in July 1992) and left open the question of postmajority support for Karen. The court also ordered Mr. Kraft to pay Troy $200 per month for 36 months in order to assist Troy with college expenses. The court conditioned these payments upon Troy's satisfactory academic performance.

The trial court awarded to Mrs. Kraft the following: the parties' house in Colville, valued at $126,000 and subject to a $60,000 mortgage; the parties' rental property in Alabama, valued at $55,000 and subject to a $16,000 mortgage; a 1979 Volvo automobile valued at $2,500; various

items of furniture and appliances worth $7,000; Mrs. Kraft's IRA worth $8,000; Mrs. Kraft's pension worth $3,000; woodworking tools worth $1,500; and various items not valued. The court ordered that Mrs. Kraft retain whatever rental income was left over from the Alabama property after the mortgage was paid (usually $200 per month). As her share of the debts, the trial court ordered Mrs. Kraft to pay the mortgages on the houses she was awarded, to repay a bank loan of $1,800, to pay the other half of the parties' debts to Troy and Karen, and to repay a $1,000 loan from her father.

The trial court, relying on expert testimony, determined that Mr. Kraft's total military pension had a present value of $247,553. The court awarded to Mr. Kraft one-half of the value of the total pension, or approximately $123,800, as his disability pay. The court determined that two-thirds of the remaining half (rounded to $82,600) was community property, based on the fact that the parties were married for 14 of the 21 years Mr. Kraft was in the service. Accordingly, the court awarded half of the community interest, or approximately $41,300, to Mrs. Kraft.

The trial court calculated that when the present values of the military benefits (disability and retirement) are added to the amounts awarded under the property distribution, and when the debts are deducted, Mr. Kraft would receive roughly $200,000 and Mrs. Kraft roughly $162,000.

The Court of Appeals held that the trial court erroneously treated Mr. Kraft's military disability pay as an asset subject to distribution, contrary to the United States Supreme Court's holding in *Mansell v. Mansell*, 490 U.S. 581, 104 L. Ed. 2d 675, 109 S. Ct. 2023 (1989). *In re Marriage of Kraft*, 61 Wn. App. 45, 808 P.2d 1176 (1991). The Court of Appeals declared that when the disability pay is properly eliminated from the distribution equation, the result is a grossly disproportionate share of the parties' assets being awarded to Mrs. Kraft. 61 Wn. App. at 50. Accordingly, the Court of Appeals reversed and remanded for redistribution of assets and recomputation of child and postmajority support. This court accepted Mrs. Kraft's petition for review.

## ISSUE

The primary issue presented is whether the trial court improperly considered Mr. Kraft's military disability retirement pay in distributing the parties' assets given the *Mansell* holding.

## ANALYSIS

### I

Persons who serve in the military for an extended period, usually at least 20 years, are entitled to retirement pay. *E.g.*, 10 U.S.C. § 3911 *et seq.* (1988) (Army); § 8911 *et seq.* (Air Force). Veterans are also entitled to disability benefits if they became disabled as a result of military service. 38 U.S.C. § 310 (1988) (wartime); § 331 (peacetime). A veteran may not receive both full retirement pay and disability pay, however. A retiree may receive disability benefits only to the extent that he or she waives a corresponding amount of military retirement pay. 38 U.S.C. § 3105 (1988). Such waivers are advantageous to retirees because disability benefits, unlike retirement pay, are exempt from federal, state, and local taxes. 38 U.S.C. § 3101(a) (1988).

In 1981, the United States Supreme Court held, in *McCarty v. McCarty*, 453 U.S. 210, 69 L. Ed. 2d 589, 101 S. Ct. 2728 (1981), that federal law precluded a state court, upon the dissolution of a marriage, from dividing military *retirement* pay pursuant to state community property laws. Disability pay was not at issue. The Court reasoned that Congress intended military retirement pay to reach the veteran and no one else, and that therefore treating such pay as community property would do clear damage to important military personnel objectives. 453 U.S. at 232-35.

Congress responded to *McCarty* in 1982 by enacting the Uniformed Services Former Spouses' Protection Act (USFSPA), which authorizes state courts to treat "disposable retired or retainer pay" as community property subject to division upon dissolution of a marriage. 10 U.S.C. § 1408(c)(1) (1988). "Disposable retired or retainer pay" is defined in the USFSPA to exclude, *inter alia*, any amounts

waived in order to receive disability benefits. 10 U.S.C. § 1408(a)(4)(B) (1988).

In *Mansell v. Mansell, supra,* the Court addressed the question whether state courts may treat, as property divisible upon divorce, military retirement pay waived by the retiree in order to receive veterans' disability benefits. The Court held that state courts may not do so. The Court drew this conclusion from the fact that the USFSPA grants state courts the authority to treat disposable retired pay as community property but specifically excludes retirement pay waived in order to receive disability pay. 490 U.S. at 589. *See generally* Note, Mansell v. Mansell: *How it Changed the Definition of Marital Property for the Military Spouse,* 30 J. Fam. L. 97 (1991-1992).

In order to assess *Mansell* properly, we must contemporaneously consider RCW 26.09.080, which provides that in a dissolution proceeding the court must dispose of the parties' property in a "just and equitable" manner after considering, *inter alia,* "[t]he economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to a spouse with whom the children reside the majority of the time." Thus, *Mansell* requires the trial court not to treat military disability retirement pay as divisible, whereas RCW 26.09.080 requires the trial court to make an equitable distribution in light of the parties' postdissolution economic circumstances. The question then becomes how the trial court is to honor both these requirements.

## II

Guidance is provided by a number of state court decisions. For example, in *Rothwell v. Rothwell,* 775 S.W.2d 888, 891 (Tex. Ct. App. 1989), the veteran claimed that the trial court erred in awarding a disproportionate share of the marital home to his ex-wife. In upholding the property distribution, the Texas Court of Appeals rejected this argument and declared that "the trial court could consider V.A. dis-

ability retirement benefits which were payable to the husband in making a just and right division of the community assets, but it could not make any division of those benefits." 775 S.W.2d at 892. Similarly, in *Bewley v. Bewley*, 116 Idaho 845, 780 P.2d 596 (Ct. App. 1989), the magistrate who had divided the parties' property treated the disability pay as separate property and left it with the veteran. The magistrate then awarded the spouse "more than her share of the community property, partially offsetting the disability pay retained by Mr. Bewley." 116 Idaho at 846. The Idaho Court of Appeals affirmed the property distribution. 116 Idaho at 847. Thus, at least two community property states have interpreted *Mansell* as permitting the trial court to consider military disability retirement pay as a factor justifying awarding a disproportionate share of the community property to the nonretiree spouse.

Some noncommunity property states have interpreted *Mansell* similarly. For example, in *Davis v. Davis*, 777 S.W.2d 230 (Ky. 1989), the Supreme Court of Kentucky held that when inequity arises in divorce proceedings because of the payment of disability benefits to the military employee, the trial court may grant an increased award of spousal support or marital property. 777 S.W.2d at 232. Similarly, in *Jones v. Jones*, 7 Hawaii App. 496, 780 P.2d 581 (1989), the Hawaii Intermediate Court of Appeals stated that the trial court may consider military disability retirement pay in the same way it considers each party's ability to earn income post divorce. 7 Hawaii App. at 500. *Jones* is also instructive because it shows how a trial court may go too far in considering the pay. There, the trial court had reduced the husband's military disability retirement pay to its present value, then used that value as the basis for awarding the wife other marital property of equal cash value. The Hawaii Intermediate Court of Appeals held this was error. 7 Hawaii App. at 500-01.

Other noncommunity property state courts have held that although military disability retirement pay may not be included as part of the marital estate, it may be considered as a source of income of the retiree spouse in awarding

spousal or child support. *E.g.*, *Lambert v. Lambert*, 10 Va. App. 623, 627, 395 S.E.2d 207 (1990); *Riley v. Riley*, 82 Md. App. 400, 409-10, 571 A.2d 1261 (1990). In *Murphy v. Murphy*, 302 Ark. 157, 787 S.W.2d 684 (1990), the Supreme Court of Arkansas went so far as to uphold an award of spousal support to a nonretiree spouse where the retiree spouse's only source of income was military disability retirement pay. The court explained that the nonretiree spouse was not entitled to direct payments for alimony under the USFSPA, but that federal law did not preclude the trial court from awarding alimony or relieve the husband from paying alimony out of his military disability retirement pay once he had received it. 302 Ark. at 159.

### III

The cited state court decisions interpreting *Mansell* establish the general proposition that when making property distributions or awarding alimony the trial court may consider military disability retirement pay as future income of the retiree spouse relevant to a determination of the parties' ultimate economic circumstances. This rule is consistent with our decision in *In re Marriage of Dessauer*, 97 Wn.2d 831, 650 P.2d 1099 (1982), *abandoned on other grounds in In re Marriage of Smith*, 100 Wn.2d 319, 324, 669 P.2d 448 (1983). *Dessauer* arose after the United States Supreme Court decided *McCarty v. McCarty*, *supra*, but before Congress legislatively overruled that decision in the USFSPA. Thus at the time *Dessauer* was decided, state courts were prohibited from dividing military *nondisability* retirement pay pursuant to state community property laws.

*Dessauer* involved two separate dissolution actions (Dessauer and Salerno) involving husbands with military nondisability retirement income. In each action, the husband contended that the trial court had considered his retirement income in a fashion inconsistent with *McCarty* when making the property distribution.

In the Dessauer action, the trial court had classified the retired pay as community property and divided the benefits between the parties. 97 Wn.2d at 834. We held this was improper under *McCarty*, and we remanded the action to the trial court for redistribution. 97 Wn.2d at 834. In the combined dissolution appeal of Salerno, the trial court had not classified the retirement pay as community property and had not divided it or offset other property because of it. 97 Wn.2d at 834, 836-37. Instead, the trial court had considered the fact that Mr. Salerno received a monthly income as an economic circumstance of the parties. 97 Wn.2d at 837. The trial court had discussed the value of the pension in terms of present value, but had specifically stated the court did not consider this value in dividing the remainder of the property. 97 Wn.2d at 834. We held that the Salerno trial court's action was proper under *McCarty* and explained that "[w]ithout considering the true economic circumstances of the parties before it, the court would be unable to properly exercise its discretion and make a just and equitable distribution of the property as required by [RCW 26.09.080]." *Dessauer*, at 838. We therefore concluded:

> [A] court may consider military nondisability retired pay as an economic circumstance of the parties when dividing property. However, the court must not characterize the retirement income as community property or divide it. Neither may it value the pension and offset property against that value.

*Dessauer*, at 839. *Accord*, *In re Marriage of Smith*, 33 Wn. App. 147, 652 P.2d 391 (1982) (post-*McCarty* but pre-USFSPA decision holding trial court erred by awarding wife community property of comparable value in order to offset fully husband's military retirement); *In re Marriage of Roark*, 34 Wn. App. 252, 659 P.2d 1133 (1983) (similar result concerning railroad retirement benefits).

The conclusion we reached in *Dessauer* accords with the general rule derived above from the more recent state court decisions interpreting *Mansell*. Accordingly, we hold that when making property distributions or awarding

spousal support in a dissolution proceeding, the court may regard military disability retirement pay as future income to the retiree spouse and, so regarded, consider it as an economic circumstance of the parties. In particular, the court may consider the pay as a basis for awarding the nonretiree spouse a proportionately larger share of the community property where equity so requires. The court may not, however, divide or distribute the military disability retirement pay as an asset. It is improper under *Mansell* for the trial court to reduce military disability pay to present value where the purpose of ascertaining present value is to serve as a basis to award the nonretiree spouse a proportionately greater share of the community property as a direct offset of assets.

## IV

Applying this rule in the present case, we conclude the trial court erred by reducing Mr. Kraft's military disability retirement pay to its present value and then using that present value as the basis for awarding Mrs. Kraft a proportionately larger share of the community property as an offset of assets. The trial court reduced Mr. Kraft's entire military pension to its present value of $247,553. The court then found that half of this, or approximately $123,800, represented Mr. Kraft's disability pay and listed it along with the various other assets the court was awarding to Mr. Kraft. Adding the values of the properties the parties were to receive, and then subtracting debts, the court concluded that the property distribution would result in Mr. Kraft receiving roughly $200,000 and Mrs. Kraft roughly $162,000. This distribution would thus give Mrs. Kraft the bulk of the parties' community property as a means of offsetting the present value of Mr. Kraft's military disability retirement pay. In following this procedure the trial court effectively distributed the disability pension as an asset, contrary to the mandate of *Mansell* and contrary to the rule we have announced above.

## V

We next consider whether the trial court's incorrect manner of considering the disability benefits requires remand. This question is analogous to the question raised when an appellate court determines that the trial court committed error in characterizing property as either separate or community. We have previously held that the characterization of property is not controlling and that the ultimate question is "whether the final division of the property is fair, just and equitable under all the circumstances." *Baker v. Baker*, 80 Wn.2d 736, 745-46, 498 P.2d 315 (1972). However, "[r]emand is required where (1) the trial court's reasoning indicates that its division was significantly influenced by its characterization of the property, and (2) it is not clear that had the court properly characterized the property, it would have divided it in the same way." *In re Marriage of Shannon*, 55 Wn. App. 137, 142, 777 P.2d 8 (1989). Similarly, we hold that remand is appropriate where the trial court's property distribution was significantly influenced by its improper manner of considering military disability retirement pay and where there is doubt whether the trial court would have distributed the property the way it did had it properly considered the pay.

Here, the trial court attempted to achieve rough equality in its property distribution by reducing the disability benefits to present value and offsetting that value by awarding to Mrs. Kraft a proportionately greater share of community property.

The Court of Appeals also concluded that remand is required, but for a different reason. The Court of Appeals took the view that the trial court should have disregarded Mr. Kraft's military pension altogether, including both his disability and nondisability benefits. *In re Marriage of Kraft*, 61 Wn. App. 45, 51-52, 808 P.2d 1176 (1991). The court then concluded that when those benefits are disregarded, the trial court's distribution would result in Mr. Kraft receiving assets worth approximately $12,000 and

Mrs. Kraft receiving assets worth approximately $122,000, which in the view of the Court of Appeals is not a just and equitable distribution. *Kraft*, at 52.

We do not agree with the Court of Appeals that the trial court should have wholly disregarded the nondisability portion of Mr. Kraft's military pension. Reducing a retirement pension to its present value is a recognized procedure in the valuation of divorce assets. *See, e.g., In re Marriage of Pilant*, 42 Wn. App. 173, 179, 709 P.2d 1241 (1985). *See generally* B. Goldberg, *Valuation of Divorce Assets* § 9.5, at 251 (1984) (explaining how to determine the present value of a pension plan for purposes of a dissolution and describing the advantages of doing so); L. Golden, *Equitable Distribution of Property* § 7.12, at 227-28 (1983) (trial courts should be given broad discretion in valuing pension interests, and determining the present value of a pension is the most common method). The trial court did not err in reducing the nondisability portion of Mr. Kraft's military pension to its present value. Notably, the parties agree the trial court may reduce military pay to present value.

When the present value of just the disability benefits is disregarded, the net distribution of community property is roughly $76,200 to Mr. Kraft and $162,000 to Mrs. Kraft. A trial court has considerable discretion in making a property division and will not be reversed on appeal absent a showing of manifest abuse. *In re Marriage of Tower*, 55 Wn. App. 697, 700, 780 P.2d 863 (1989), *review denied*, 114 Wn.2d 1002 (1990). Therefore, on remand, the trial court may, if in its view equity so requires, distribute the Krafts' property in the same manner in which it did initially. What is required is that the trial court arrive at its decision as to what is just and equitable under all the circumstances after considering the military disability retirement pay in the manner we here explain.

VI

Finally, Mrs. Kraft objects to the Court of Appeals use of the term "individual property" to refer to Mr. Kraft's disability benefits. *Kraft*, at 49. Mrs. Kraft argues that in doing so

the Court of Appeals impermissibly usurped legislative power by defining a new class of "individual" property which is not subject to the rules for distribution of property on dissolution of marriage. We disagree. The court stated that it was calling the disability pay "individual property" simply to dispel any idea that military disability pay is subject to division as separate property. *Kraft*, at 49 n.2. The Court of Appeals explained that it wanted to avoid use of the term "separate property" in reference to the retirement pay because disability pay may be community property when received during marriage and may be separate property when received outside the marriage. *Kraft*, at 49 n.2. The court was not creating a new class of property.

### CONCLUSION

We hold the trial court in a marriage dissolution action may consider military disability retirement pay as a source of income in awarding spousal or child support, or generally as an economic circumstance of the parties justifying a disproportionate award of community property to the nonretiree spouse. The trial court may not, however, divide and distribute the disability pay or value it and offset other property against that value. In the present case, the trial court reduced the military disability pay to present value and then offset assets against it by awarding to Mrs. Kraft a proportionately larger share of the community property. This is not a permissible way of considering military disability retirement pay under the *Mansell* holding.

The Court of Appeals is affirmed. We remand to the trial court for reconsideration of the property distribution in light of this opinion.

DORE, C.J., and UTTER, BRACHTENBACH, DOLLIVER, ANDERSEN, DURHAM, SMITH, and JOHNSON, JJ., concur.