IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re the Marriage of: | ) | No. 30875-8-III |
| | ) | |
| AARON MATTHEW SILK, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| and | ) | UNPUBLISHED OPINION |
| | ) | |
| TERESA ANN BROADSWORD, | ) | |
| | ) | |
| Respondent. | ) | |

BROWN, J. — Aaron Matthew Silk appeals a decree dissolving his marriage to

Teresa Ann Broadsword. He contends the trial court erred in awarding her a

community-property-like interest in his tier II railroad retirement benefit, a property

equalization payment, spousal maintenance, and attorney fees and costs. We find no

error or abuse of discretion in the trial court's exercise of equitable and statutory

powers, and affirm.

FACTS

Mr. Silk and Ms. Broadsword began living together in January 1997 and bought a

home together in June 1997. They had a child, Q.S., in October 1999 and married in

December 2004. The parties separated when Mr. Silk filed for divorce in May 2011.

Throughout the parties' 14-year relationship, Mr. Silk worked for a railroad company earning tier II railroad retirement benefits. He amassed numerous tools, machines, and airplane parts in the parties' shop and outbuildings. Ms. Broadsword initially worked as a machine operator but quit to serve as Q.S.'s primary caregiver. She secured full time employment with benefits in October 2011.

Following a February 2012 bench trial, the trial court issued a memorandum opinion, factual findings and legal conclusions, and divorce decree. The court's award to Mr. Silk included the family home and all personal property in the parties' shop and outbuildings. The court's award to Ms. Broadsword included a one-half community-property-like interest in the portion of the tier II benefit Mr. Silk earned from January 1997 to December 2004, a one-half community property interest in the portion of the tier II benefit he earned from December 2004 to May 2011, $7,500 of property equalization in payments of $250 monthly, spousal maintenance of $250 monthly until Q.S. turns 18 years old or graduates from high school, and $5,371 in attorney fees and costs. Mr. Silk appealed.

## ANALYSIS

### A. Railroad Retirement Benefit

The issue is whether the trial court erred in awarding Ms. Broadsword a community-property-like interest in Mr. Silk's tier II railroad retirement benefit. He

2

contends the court lacked authority to divide the portion of the tier II benefit he earned while living in a pre-marriage committed intimate relationship (CIR) with her.[1]

We review marital property division for abuse of discretion.[2] *In re Marriage of Kraft*, 119 Wn.2d 438, 450, 832 P.2d 871 (1992); *Kolbe v. Kolbe*, 50 Wash. 298, 302, 97 P. 236 (1908). We interpret a statute de novo.[3] *Multicare Med. Ctr. v. Dep't of Soc. & Health Servs.*, 114 Wn.2d 572, 582 n.15, 790 P.2d 124 (1990).

When a spouse petitions for marriage dissolution, RCW 26.09.080 empowers the trial court to justly and equitably divide all the parties' assets, both community and

---

[1] Out of respect for the parties, we follow our Supreme Court's example in using the term "committed intimate relationship" to reference what prior judicial opinions called a "meretricious relationship." *Olver v. Fowler*, 161 Wn.2d 655, 657 n.1, 168 P.3d 348 (2007). A CIR is "a stable, marital-like relationship where both parties cohabit with knowledge that a lawful marriage between them does not exist." *Connell v. Francisco*, 127 Wn.2d 339, 346, 898 P.2d 831 (1995). Relevant factors include "continuous cohabitation, duration of the relationship, purpose of the relationship, pooling of resources and services for joint projects, and the intent of the parties." *Id.* Here, the record shows the parties lived in a CIR from January 1997 until they married in December 2004. Mr. Silk does not dispute this determination.

[2] "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." *In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997) ("A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard; it is based on untenable grounds if the factual findings are unsupported by the record; it is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard."). *Id.* at 47. Substantial evidence must support the trial court's factual findings. *In re Parentage of Goude*, 152 Wn. App. 784, 790, 219 P.3d 717 (2009). "Substantial evidence is evidence sufficient to persuade a fair-minded person of the truth of the declared premise." *In re Marriage of Hall*, 103 Wn.2d 236, 246, 692 P.2d 175 (1984).

[3] When interpreting a statute, we must "discern and implement" the legislature's intent. *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003); *see State ex rel. Great N. Ry. v. R.R. Comm'n of Wash.*, 52 Wash. 33, 36, 100 P. 184 (1909).

separate property. Where the parties did not marry but lived in a CIR; the court applies RCW 26.09.080 by analogy to justly and equitably divide any community-property-like assets the parties acquired during their CIR. *See Connell v. Francisco*, 127 Wn.2d 339, 349-51, 898 P.2d 831 (1995); *In re Marriage of Lindsey*, 101 Wn.2d 299, 304, 678 P.2d 328 (1984). A CIR is an equity relationship. *In re Meretricious Relationship of Long*, 158 Wn. App. 919, 922, 244 P.3d 26 (2010). An asset is community-property-like if it would have been community property were the parties married when they acquired it. *Connell*, 127 Wn.2d at 349. All assets the parties acquired during their CIR are presumed to be community-property-like. *Id.* at 351.

Here, the trial court characterized as community-property-like the portion of the tier II benefit Mr. Silk earned during his pre-marriage CIR with Ms. Broadsword. The court then divided the benefit accordingly. He argues federal preemption precluded the court's action under these circumstances.

The Railroad Retirement Act of 1974, 45 U.S.C. §§ 231-231v, establishes two tiers of benefits for railroad workers. *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 574, 99 S. Ct. 802, 59 L. Ed. 2d 1 (1979). Tier I benefits mirror social security protections while tier II benefits resemble private pensions contingent on earnings and career service. *Id.* at 574-75. In 1979, the U.S. Supreme Court held 45 U.S.C. § 231m and other federal law allocating railroad retirement benefits preempts state community property law to the extent a conflict emerges in characterizing and dividing the benefits upon divorce. *Hisquierdo*, 439 U.S. at 582-85. Then, in 1983, the U.S. Congress amended 45 U.S.C. § 231m to provide:

4

> This section shall not operate to prohibit the characterization or treatment of that portion of an annuity under this subchapter which is not computed under section 231b(a), 231c(a), or 231c(f) of this title, or any portion of a supplemental annuity under this subchapter, as community property for the purposes of, or property subject to, distribution in accordance with a court decree of divorce, annulment, or legal separation or the terms of any court-approved property settlement incident to any such court decree. The [Railroad Retirement] Board shall make payments of such portions in accordance with any such characterization or treatment or any such decree or settlement.

Railroad Retirement Solvency Act of 1983 § 419(a)(3), 45 U.S.C. § 231m(b)(2).

Emphasizing marriage as a necessary predicate to a "decree of divorce," Mr. Silk argues the 1983 amendment does not apply to the portion of the tier II benefit he earned during his pre-marriage CIR with Ms. Broadsword. We disagree. The 1983 amendment expressly removes federal preemption and defers to state community property law in characterizing and dividing tier II benefits upon divorce. *In re Marriage of Anderson*, 134 Wn. App. 111, 115, 138 P.3d 1118 (2006) (citing *Lee v. Lee*, 727 So. 2d 622, 626-27 (La. Ct. App. 1st Cir. 1998); *McGraw v. McGraw*, 186 W. Va. 113, 115, 411 S.E.2d 256 (1991)). Mr. Silk's petition for marriage dissolution empowered the court to justly and equitably divide all the parties' assets, including the community-property-like assets they acquired during their pre-marriage CIR. *See* RCW 26.09.080; *Connell*, 127 Wn.2d at 349-51; *Lindsey*, 101 Wn.2d at 304. The 1983 amendment plainly authorized the court's action under these circumstances. Therefore, the trial court did not err in awarding Ms. Broadsword a community-property-like interest in Mr. Silk's tier II railroad retirement benefit.

5

## B. Equalization Payment

The issue is whether the trial court erred in awarding Ms. Broadsword a property

equalization payment in lieu of personal property awarded to Mr. Silk. He contends the

court did not properly determine the property's value, as required to justly and equitably

award her equalization. We review marital property division for abuse of discretion.

*Kraft*, 119 Wn.2d at 450; *Kolbe*, 50 Wash. at 302. Under RCW 26.09.080, the trial court

must divide all marital property between the spouses in a manner deemed just and

equitable, considering four nonexclusive factors:

> (1) the community property's nature and extent;
> (2) the separate property's nature and extent;
> (3) the marriage's length; and
> (4) their respective economic circumstances, including the desirability of
> awarding the family home to the spouse with the majority of child custody time.

The court abuses its discretion if it divides marital property without any evidence on the

value of a substantial number of individual items. *Wold v. Wold*, 7 Wn. App. 872, 878,

503 P.2d 118 (1972); *see also In re Marriage of Greene*, 97 Wn. App. 708, 712, 986

P.2d 144 (1999).

Here, the trial court awarded Mr. Silk the numerous tools, machines, and airplane

parts he amassed in the parties' shop and outbuildings. He failed to submit valuations

or photographs of these items and generally failed to cooperate. Ms. Broadsword

testified she thought a well-advertised auction could sell the items for up to $40,000.

The court determined the items were worth up to $10,000. Additionally, the court noted

Mr. Silk may have dissipated the marital property by hoarding these items and failing to

make them productive. But the court did not rely upon dissipation. Ultimately, the court

deemed it just and equitable to award Ms. Broadsword $7,500 of property equalization in payments of $250 monthly. Considering the court's reasoned analysis and the lack of genuine dispute over the valuation issue, the court did not abuse its discretion. Therefore, we conclude the trial court did not err in awarding Ms. Broadsword a property equalization payment in lieu of personal property awarded to Mr. Silk.

## C. Maintenance

The issue is whether the trial court erred in awarding Ms. Broadsword spousal maintenance. Mr. Silk contends the court misapplied the statutory factors and purpose. We review a spousal maintenance award for abuse of discretion. *In re Marriage of Washburn*, 101 Wn.2d 168, 179, 677 P.2d 152 (1984); *see Cain v. Cain*, 90 Wash. 402, 403, 156 P. 403 (1916). Under RCW 26.09.090(1), the trial court may award maintenance to either spouse in an amount and for a duration deemed just, considering six nonexclusive factors:

(1) their respective financial resources and abilities to meet their needs independently;
(2) the marriage's length;
(3) the time necessary for the spouse receiving maintenance to acquire employment-related education or training;
(4) the standard of living they established while married;
(5) the age, health, and financial obligations of the spouse receiving maintenance; and
(6) the ability of the spouse paying maintenance to support himself or herself as well as the spouse receiving maintenance.

The purpose of spousal maintenance is to help support a needy spouse until he or she is able to support himself or herself. *In re Marriage of Irwin*, 64 Wn. App. 38, 55, 822 P.2d 797 (1992); *In re Marriage of Luckey*, 73 Wn. App. 201, 209, 868 P.2d 189 (1994).

7

Mr. Silk argues Ms. Broadsword does not need spousal maintenance because, after adjusting for the child support and property equalization payments he must make to her, her income is higher than his. But Mr. Silk fails to consider her income supports two people, unlike his. Even so, the trial court must do what it considers just, not what Mr. Silk perceives as fair. His bare disagreement does not show the court abused its discretion.

The trial court reasoned Mr. Silk's net income was nearly twice that of Ms. Broadsword's net income; while he worked and provided financial support throughout their seven-year marriage and seven-year CIR,[4] she served as Q.S.'s primary caregiver and had just recently secured full time employment with benefits; she was 47 years old and he was 40 years old; both have suffered health problems not currently interfering with their employment; both overestimated their expenses; even after adjustments, she still lacks financial resources to pay all her expenses on her own but he has enough financial resources left over to help pay some of her expenses; specifically, he can pay her maintenance of $250 monthly until Q.S. turns 18 years old or graduates from high school;[5] the award is just enough in amount and duration to help her afford a residence

---

[4] Mr. Silk argues the trial court could not consider the seven years the parties lived in a pre-marriage CIR because spousal maintenance is available solely upon divorce. But he petitioned the court to dissolve his *marriage* to Ms. Broadsword, not his CIR with her. And, in awarding spousal maintenance upon divorce, the court is not limited to the factors listed in RCW 26.09.090(1) because they are expressly nonexclusive. Mr. Silk's argument is unpersuasive.

[5] Mr. Silk complains the trial court's final order sounds too much like a child support award because the payments must continue until Q.S. turns 18 years old or graduates from high school. But because the court intended spousal maintenance to help Ms. Broadsword afford a residence for herself and Q.S., it is logical the payments should cease around his maturation, when her housing needs will change.

for herself and Q.S. Considering all, we conclude the court did not abuse its discretion. Therefore, the trial court did not err in awarding Ms. Broadsword spousal maintenance.

### D. Attorney Fees and Costs

The issue is whether the trial court erred in awarding Ms. Broadsword attorney fees and costs. Mr. Silk contends the court misjudged the parties' respective needs and abilities to pay. We review an award of attorney fees and costs in a divorce case for abuse of discretion. *In re Marriage of MacDonald*, 104 Wn.2d 745, 751, 709 P.2d 1196 (1985); *Gibson v. Gibson*, 67 Wash. 474, 477-78, 122 P. 15 (1912). Under RCW 26.09.140, the trial court may award reasonable attorney fees and costs to either party in a divorce case, considering the balance of their respective needs and abilities to pay. *In re Marriage of Moody*, 137 Wn.2d 979, 994, 976 P.2d 1240 (1999); *Koon v. Koon*, 50 Wn.2d 577, 581, 313 P.2d 369 (1957).

Again, Mr. Silk argues Ms. Broadsword does not need an award of attorney fees and costs because, after adjusting for the child support, spousal maintenance, and property equalization payments he must make to her, her income is higher than his. And again, his bare disagreement does not show the trial court abused its discretion. The record shows the court considered Ms. Broadsword's need and Mr. Silk's ability to pay.

Moreover, though not incorporated into its divorce decree or factual findings and legal conclusions, the trial court's memorandum opinion thoroughly described Mr. Silk's noncooperation and dubbed it "intransigence" that "required [Ms. Broadsword]'s attorney to obtain . . . information at a significant cost and expense." Clerk's Papers at

9

24. This is an alternative basis for affirming. *See* RAP 2.5(a) (providing this court may affirm on any ground the record is sufficiently developed for this court to fairly consider). As an equitable remedy, a trial court may order a party to pay reasonable attorney fees and costs, regardless of need or ability to pay, if his or her intransigence demanded additional legal services. *Eide v. Eide*, 1 Wn. App. 440, 445, 462 P.2d 562 (1969); *In re Marriage of Greenlee*, 65 Wn. App. 703, 708, 829 P.2d 1120 (1992); *see also Fleckenstein v. Fleckenstein*, 59 Wn.2d 131, 133, 366 P.2d 688 (1961); *Gamache v. Gamache*, 66 Wn.2d 822, 829-30, 409 P.2d 859 (1965). In sum, we conclude the trial court did not err in awarding Ms. Broadsword reasonable attorney fees and costs.

Both parties ask us to award them appellate attorney fees and costs. Under RCW 26.09.140, we may, in our discretion, award either party reasonable attorney fees and costs incurred on appeal from a divorce case. In exercising this discretion, we consider the parties' financial resources as well as the arguable merit of the issues they raise on appeal. *In re Marriage of C.M.C.*, 87 Wn. App. 84, 89, 940 P.2d 669 (1997), *aff'd*, 136 Wn.2d 800, 966 P.2d 1247 (1998). We cannot properly evaluate a party's financial resources unless he or she files an affidavit of financial need, as required by RAP 18.1(c). Mr. Silk's arguments lack merit and he did not file documentation establishing his financial need. By contrast, Ms. Broadsword's arguments have merit and she filed documentation establishing her financial need. As discussed above, the record shows Mr. Silk's ability to pay. Therefore, we deny Mr. Silk's request and grant Ms. Broadsword's request, contingent upon her compliance with RAP 18.1(d).

No. 30875-8-III
*In re Marriage of Silk*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

Brown, J.

WE CONCUR:

Siddoway, A.C.J.

Fearing, J.

11