IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | |
| | ) | No. 39074-8-III |
| NANCY A. MAYBERRY, | ) | (Consolidated with |
| | ) | No. 40250-9-III) |
| Respondent, | ) | |
| | ) | |
| and | ) | UNPUBLISHED OPINION |
| | ) | |
| STANLEY A. MAYBERRY, | ) | |
| | ) | |
| Appellant. | ) | |

STAAB, A.C.J. — In the anchor case, Stanley Mayberry appeals the trial court's finding of contempt. He argues the court erred because his financial declaration sufficed as uncontroverted evidence of his inability to pay spousal support as ordered. Nancy Mayberry responds that the court's finding of contempt was supported by its determination that Stanley's financial declaration lacked credibility.

In the consolidated dissolution case, Stanley appeals the court's finding that a coin collection was community property, which in turn increased the total value of community property divided by the court. Nancy argues that Stanley failed to overcome the presumption that the coin collection was community property. Alternatively, Nancy contends that the characterization was immaterial because the ultimate distribution was fair and equitable. Finally, Stanley argues the court erred when it ordered 12 percent

compound interest on unpaid judgments. In response, Nancy urges this court to deny review because the issue is moot.

We find no abuse of discretion and affirm.

## BACKGROUND

Stanley A. Mayberry and Nancy A. Mayberry were married in 1977. In August 2020, after 43 years of marriage, Nancy[1] filed for divorce. In his response, Stanley provided a list of specific items he wanted when the assets were divided, including gold, items left to him from his father and grandfather, guns, knives, fishing gear, a Ford F-150, a safe that was made by a childhood friend, and a coin collection. He also filed a financial declaration "2020 declaration". In the 2020 declaration, Stanley reported income from three sources totaling $5,615 per month. He received $1,235 from Social Security, $3,279 in Veterans Affairs (VA) disability, and $1,101 from a California pension. Stanley's reported expenses totaled $4,629 per month, which included $1,215 for healthcare, $740 for transportation, and $680 in personal expenses.

In January 2021, a superior court commissioner entered a temporary family law order (TFO) ordering Stanley to pay $1,000 spousal support to Nancy per month. The first payment was a partial payment of $500 retroactively due December 15, 2020. On February 8, 2021, a superior court judge revised the TFO. The revised TFO increased

---

[1] Because the parties share the same last name, this opinion uses their first names to avoid confusion. No disrespect is intended.

spousal support to $2,215 per month. Additionally, the first payment of $2,215 was retroactively due December 1, 2020. The court noted that the amount was decided so as to "leave both parties the ability to pay their expenses after the Court found [Stanley]'s expenses suspect." Clerk's Papers (CP) at 96-97.

*Contempt proceedings*

Stanley did not pay spousal support for December 2020, January 2021, or February 2021, causing Nancy to file a motion for contempt "2021 contempt". She requested judgment for $6,645 plus attorney fees. Following a hearing on the matter, the court found that Stanley was able to follow the TFO and intentionally failed to do so. The court further found that he was able and willing to follow the TFO moving forward. Accordingly, the court found Stanley in contempt. The court awarded Nancy a judgment of $6,645 for past due spousal support and $500 attorney fees and costs.

From March 2021 through November 2021, Stanley paid spousal support each month in amounts ranging from $2,215 to $6,645. Notwithstanding these payments, Stanley never satisfied the past due amount in whole. By November 2021, Stanley owed $1,775 in past due spousal support and had yet to pay the $500 attorney fee award. Stanley did not make any payments in December 2021, January 2022, or February 2022. Nancy filed a second motion for contempt "2022 contempt", requesting judgment for $8,420 in past due spousal support and an additional $1,500 attorney fees and costs.

Stanley submitted a second financial declaration "2022 declaration". In this declaration, Stanley reported a total monthly income of $6,463 and $6,619 in monthly expenses. This time, his expenses included $2,175 for healthcare, $1,419 for transportation, and $950 for personal expenses.

At the 2022 contempt hearing, Stanley asserted his inability to pay as an affirmative defense. He relied on his 2022 declaration and explained that he required multiple caregivers throughout each month to cook, clean, and provide transportation. Moreover, he claimed he was only able to pay spousal support in the past year by exhausting a recent windfall of backpay from the VA.

Nancy challenged Stanley's declaration of expenses. She argued that some of Stanley's claimed expenses tripled or quadrupled since his previous financial declaration. She understood that Stanley's medical care was "100 [percent] covered by the VA," yet he reported monthly healthcare expenses of $1,215 in his first declaration and $2,175 in the second. RP (Mar. 4, 2022) at 17; *see* CP at 49-50, 162. Nancy also disputed Stanley's claimed transportation costs.

In addition to arguing his inability to pay, Stanley also asserted the TFO was void because only $1,123 of his monthly income was within the reach of the court. He argued that income from VA disability and Social Security were exempt. In response, the commissioner requested additional briefing on whether veterans disability payments could be used to calculate and pay spousal support. Based on that briefing, and satisfied

that the payments could be considered, the commissioner found the TFO was legally valid. Even so, the commissioner denied the contempt motion, finding there was no evidence of bad faith and that Stanley proved his inability to pay. In response, Nancy filed a motion to revise the commissioner's ruling.

At the revision hearing, the superior court judge echoed Nancy's concerns regarding the credibility of Stanley's financial declarations. The court noted the sudden inflation of expenses and lack of supporting documentation, opining that the 2022 declaration was "more suspect" than the 2020 declaration. Stanley's counsel explained that he made every effort to obtain additional evidence of the expenses but was only provided the 2022 declaration. After reviewing the evidence considered by the commissioner, the court determined that Stanley had the ability to pay and intentionally failed to do so. Accordingly, the court granted Nancy's motion to revise and found Stanley in contempt. The court awarded $8,420 past due spousal support and $7,248 in lawyer fees and costs. It also ordered Stanley to pay the $500 attorney fee from the 2021 contempt.

*Dissolution proceedings*

Trial for dissolution began on November 1, 2023. In advance of trial, Nancy submitted a joint trial management report in which she specified that the coin collection was community property and recommended it be divided among the parties equally. The collection was valued at $2,853.25 based on a recent appraisal Nancy obtained. Stanley

did not respond to the report, nor did he contribute recommendations for the valuation, characterization, or division of assets and liabilities.

At trial, Nancy testified that Stanley received the coin collection from his father. She also testified that she understood the collection also belonged to her, referring to herself and Stanley as "co-trustees." RP (Nov. 1-2, 2023) at 248. Stanley did not testify at trial and offered no other evidence on the issue.

Following trial, the court divided assets based on its findings. The court considered the length of the marriage, the nature and extent of the separate and community property, and the economic circumstances of each party. It noted that Nancy spent several decades as Stanley's caregiver, which reduced her earnings and retirement savings. Regarding the coin collection, the court found that it was a gift to both parties. Based on its findings, the court awarded Nancy "a larger share of the community property" and "a portion of Stanley Mayberry's separate property." CP at 1500. Finally, the court ruled that "[a]ny previous orders for specific financial relief that have not been paid should be reduced to a judgment at 12 [percent] compounded annual interest." CP at 1499. Under the final divorce order, the court confirmed that "all such payments were satisfied out of community funds prior to the trial and are no longer owed." CP at 1506.

Stanley appeals.

ANALYSIS

1. CONTEMPT

Stanley argues that the superior court abused its discretion by finding him in contempt for failing to pay spousal support because he offered undisputed evidence of his inability to pay. He further argues that the corresponding $500 attorney fee should be reversed because the contempt cannot stand, or alternatively, because the fee was duplicative. Nancy responds that the court made a proper credibility judgment as to Stanley's evidence, which supports the contempt finding. She contends that the $500 attorney fee was neither assessed nor paid twice as Stanley asserts. We agree with Nancy on both points.

A superior court judge reviews a commissioner's ruling de novo based on the evidence and the issues presented to the commissioner. RCW 26.12.215; RCW 2.24.050; *In re Marriage of Moody*, 137 Wn.2d 979, 992-93, 976 P.2d 1240 (1999). On appeal, we review the superior court's decision, not the commissioner's. *In re Estate of Wright*, 147 Wn. App. 674, 680, 196 P.3d 1075 (2008). The superior court's finding of contempt will not be disturbed on appeal absent an abuse of discretion. *In re Marriage of Eklund*, 143 Wn. App. 207, 212, 177 P.3d 189 (2008). "A trial court abuses its discretion by exercising it on untenable grounds or for untenable reasons." *Id*. Credibility determinations are not reviewed on appeal. *Id*.

7

"Contempt of court" is an "intentional disobedience of a lawful court order." *In re Humphreys*, 79 Wn. App. 596, 599, 903 P.2d 1012 (1995). In a dissolution proceeding, the court may enforce its orders in a contempt proceeding. *Stablein v. Stablein*, 59 Wn.2d 465, 466, 368 P.2d 174 (1962). A party is presumed to be capable of performing according to a court order. *Moreman v. Butcher*, 126 Wn.2d 36, 40, 891 P.2d 725 (1995). The inability to comply with a court order is a defense if the party is unable to comply through no fault of their own. *Britannia Holdings Ltd. v. Greer*, 127 Wn. App. 926, 933-34, 113 P.3d 1041 (2005). The non-compliant party bears "the burden of production and the burden of persuasion regarding [their] claimed inability to comply with the court's order. *Moreman*, 126 Wn.2d at 40. "'[T]he evidence must be of a kind the court finds credible.'" *Id.* at 41 (quoting *In re Pers. Restraint of King*, 110 Wn.2d 793, 804, 756 P.2d 1303 (1988)).

Here, the trial court properly limited its review to that which was considered by the commissioner. The evidence included Stanley's financial declarations from 2020 and 2022. On the 2020 declaration, Stanley reported monthly income of $5,615 and monthly expenses of $4,629. On the 2022 declaration, Stanley reported monthly income of $6,463 and monthly expenses of $6,619.

Nancy contested Stanley's declaration of expenses. For example, his reported health care expenses increased from $1,215 in 2020 to $2,175 in 2022. Stanley explained that he required multiple caregivers throughout each month to cook, clean, provide

transportation, and perform other caretaking duties.  Nancy disputed these costs, understanding that Stanley's medical care was "100 [percent] covered by the VA."  RP (Mar. 4, 2022) at 17.

Nancy also disputed Stanley's claimed transportation costs, which reportedly increased from $740 per month in 2020 to $1,419 per month in 2022.  Nancy's counsel referred to Stanley's gas expenditures as "somewhat humorous," arguing, "So, we've got the insurance of $200.00, car payment of $319.00, $400.00 of gas, $500.00 to Uber.  Remember, Your Honor, [Stanley] said in his response his car was stolen in June of 2021.  So, how does he have gas expenses?"  RP (Mar. 4, 2022) at 18.

On revision, the court echoed Nancy's concerns regarding the credibility of Stanley's financial declarations.  The court noted that "a mere declaration which had previously been found to be suspect . . . all of a sudden inflates by more than $2,000 without any supporting documentation is very concerning."  RP (Apr. 21, 2022) at 23.  And "there were no bank statements that show . . . this is what's coming in and this is what's going out.  Really, all we have is a declaration that, frankly, is more suspect than the one that was filed . . . in December of 2020."  RP (Apr. 21, 2022) at 23-24.

In sum, the court found that Stanley failed to provide credible evidence proving his inability to pay.  We will not disturb the trial court's credibility determinations on appeal.  *See Eklund*, 143 Wn. App. at 212.  As such, the court did not abuse its discretion by holding Stanley in contempt.

9

Stanley argues that his financial declaration was undisputed evidence and all he needed to prove his inability to pay. This argument fails for multiple reasons. First, the evidence was highly disputed, as discussed above. Second, Stanley carried the burden of production and persuasion, and the court found that his declaration alone was not credible enough to meet this burden. Finally, Stanley was aware that the court would likely expect supporting documentation.

Stanley cites *Smith v. Pacific Pools, Inc.*, 12 Wn. App. 578, 582, 530 P.2d 658, 661 (1975) in support of his assertion that the trial court cannot ignore uncontradicted evidence. But *Smith* held that if "the court rejects uncontroverted credible evidence, or capriciously disbelieves uncontradicted evidence, then the finding is not binding upon the appellate court." *Id*. Here, the court found Stanley's evidence was not credible and we conclude its decision to disbelieve his declaration was not capricious.

Next, Stanley asserts that because the finding of contempt was error, the corresponding attorney fees should be reversed. Nancy argues that she is entitled to fees regardless of whether Stanley was held in contempt or not because the contempt proceeding was an action to enforce spousal support. Because the finding of contempt was not error, we need not reach this issue.

Finally, Stanley asserts that the same $500 attorney fee was levied against him twice. This contention is simply not true. In addition to the $7,248 fee award, the revising court included $500 from the "previous contempt motion." *See* CP 293. An

uncontested accounting of the various judgments and payments confirms that the $500 attorney fee awarded from the first contempt hearing order was only charged once.

Stanley apparently misunderstands what the court was referring to as the "previous contempt" motion for which the fee was awarded. Stanley believes the court awarded $7,248 for the motion to revise and $500 for the contempt motion that was the subject of the revision. He claims this was duplicative because $7,248 included the fees for both the contempt motion and its revision. Stanley is correct that the $7,248 award satisfied the fees for both the motion and revision. However, when the court included $500 for the "previous contempt" motion, it was not referring to the 2022 contempt motion on revision; it was referring to the unpaid fee award from the 2021 contempt motion filed and decided one year prior. As such, the fee award was not erroneously duplicative.

The trial court did not abuse its discretion by finding that Stanley had the ability to pay the ordered spousal support and holding him in contempt for failing to do so.

2.  CHARACTERIZATION OF COIN COLLECTION

Stanley argues that the court mischaracterized the coin collection as community property because it was inherited by Stanley from his father. He contends the mischaracterization inflated the total value of community property, thus affecting the ultimate distribution. Nancy maintains that the coin collection was gifted to her and Stanley jointly; regardless, even if the collection was mischaracterized, it was of little value and characterizing it differently would not have changed the asset division.

11

Property is presumed to be community property if acquired during marriage. *See In re Marriage of Zahm*, 91 Wn. App. 78, 86, 955 P.2d 412 (1998). But an asset acquired during marriage by gift or inheritance is separate property. *In re Marriage of Chumbley,* 150 Wn.2d 1, 5, 74 P.3d 129 (2003). A party wishing to establish that an asset acquired during marriage is separate property must present clear and convincing evidence to rebut the presumption. *Id.* at 5-6; *Zahm*, 91 Wn. App. at 86. "We review the factual findings supporting the trial court's characterization for substantial evidence." *In re Marriage of Schwarz*, 192 Wn. App. 180, 192, 368 P.3d 173 (2016). "'Substantial evidence' is evidence sufficient to persuade a fair-minded person of the truth of the matter asserted." *In re Marriage of Chandola*, 180 Wn.2d 632, 642, 327 P.3d 644 (2014).

Whether property is characterized as separate or community is not controlling. *In re Marriage of Kraft*, 119 Wn.2d 438, 449, 832 P.2d 871 (1992). Instead, the question is "'whether the final division of the property is fair, just and equitable under all the circumstances.'" *Id.* (quoting *Baker v. Baker*, 80 Wn.2d 736, 745-46, 498 P.2d 315 (1972)). Remand is appropriate if "'(1) the trial court's reasoning indicates that its division was significantly influenced by its characterization of the property, and (2) it is not clear that had the court properly characterized the property, it would have divided it in the same way.'" *Kraft*, 119 Wn.2d at 449 (quoting *In re Marriage of Shannon*, 55 Wn. App. 137, 142, 777 P.2d 8 (1989)).

12

Here, in accordance with these rules, because the coin collection was acquired during marriage, it is presumed to be community property. Thus, Stanley was required to present clear and convincing evidence to rebut this presumption. *See Chumbley*, 150 Wn.2d at 5-6. He failed to do so.

First, in his response to petition about a marriage, Stanley made the following request:

> I want my gold, I want all my things left to me from my father & grandfather, my guns, my knifes [sic], my fishing gear, my 2005 Ford F-150 (400,000 [illegible]), my safe was made special for my father & myself (childhood friend made it), coin collection, etc. (see attached)[2] memories I want all my things that belong to me.

CP at 1161 (most capitalization omitted). This request demonstrates Stanley's desire to be awarded the coin collection but it does not indicate that the collection was his alone by way of gift or inheritance. In fact, it is listed separately from "things left to me from my father & grandfather" and, unlike the safe, does not include additional language clarifying the collection's origin or personal meaning.

Next, on the joint trial management report, Nancy indicated that the coin collection was community property and recommended it be divided equally. Stanley did not respond to the report, nor did he contribute recommendations for the valuation, characterization, or division of assets and liabilities.

---

[2] The attachment, if any, was not included in the clerk's papers.

Finally, at trial, Nancy testified that although Stanley received the coin collection from his father, she understood the collection also belonged to her, referring to herself and Stanley as "co-trustees." RP (Nov. 1-2, 2023) at 248. Nancy was in physical possession of the collection and had it professionally appraised, intending that the value be divided equally. Stanley did not testify at trial and offered no other evidence on the issue.

In sum, there is sufficient evidence to persuade a fair-minded person that the coin collection was a gift to both parties. Moreover, Stanley failed to present clear and convincing evidence that the coins were his separate property.

Regardless, even if the trial court mischaracterized the coin collection, Stanley's argument fails because the trial court's reasoning does not indicate that the final division of property was significantly influenced by such characterization. *See Kraft*, 119 Wn.2d at 449. The court awarded Nancy "a larger share of the community property" and "a portion of Stanley Mayberry's separate property." CP at 1500. It did so "[g]iven the length of the marriage, the nature and extent of the separate and community property and the economic circumstances of each party." CP at 1500.

The coin collection, which was appraised at $2,853.25, represented less than two percent of the total value of community personal property. Because the coin collection's value was relatively low and Nancy was awarded a larger portion of community property and a portion of Stanley's separate property, it cannot be said that the characterization of the coin collection significantly influenced the final division of assets.

14

The trial court did not err by characterizing the coin collection as community property; any mischaracterization did not significantly influence the overall property division.

3.   POST-JUDGMENT INTEREST

Stanley argues that the trial court erred when it ordered 12 percent compound interest on unpaid judgments because compound interest was not authorized by statute or contract.  Nancy responds that the issue was not preserved for appeal and is moot because there were no unpaid judgments subject to the interest.  Although Stanley's understanding of the law is correct, we decline to review the issue because it is moot.

A court may only impose simple interest on a judgment unless compound interest is authorized by statute or agreement.  *See Caruso v. Local Union No. 690*, 50 Wn. App. 688, 689-90, 749 P.2d 1304 (1988); *see* RCW 4.56.110.  Here, the court imposed 12 percent compound interest on any unpaid judgments from prior contempt proceedings.  In doing so, the trial court did not apply or reference a statute or agreement authorizing compound interest.

"'A case is moot if a court can no longer provide effective relief.'"  *Herrera v. Villaneda*, 3 Wn. App. 2d 483, 492, 416 P.3d 733 (2018) (quoting *Blackmon v. Blackmon*, 155 Wn. App. 715, 719, 230 P.3d 233 (2010)).

Here, there was never an unpaid judgment subject to compound interest.  The court found: "Previous orders for contempt and attorney fees—Any previous orders for specific

15

financial relief that have not been paid should be reduced to a judgment at 12 [percent] compounded annual interest." CP at 1499. However, the divorce decree clarified that "for those amounts owed prior to trial, it is confirmed that all such payments were satisfied out of community funds prior to the trial and are no longer owed." CP at 1506.[3]

Because compound interest only applied to previous unpaid judgments and there were no unpaid judgments, effective relief is not available, and the issue is moot.

4. ATTORNEY FEES

Both parties request attorney fees for this appeal. We discuss each request in turn.

*A. Stanley's request*

Stanley requests attorney fees under RCW 26.09.140, which provides the court with discretion to award fees and costs to either party in a dissolution proceeding "after considering the financial resources of both parties." The court also contemplates "'the arguable merit of the issues on appeal.'" *In re Marriage of Johnson*, 107 Wn. App. 500, 505, 27 P.3d 654 (2001) (quoting *In re Marriage of Griffin*, 114 Wn.2d 772, 779, 791 P.2d 519 (1990)). To consider the parties' financial resources under this statute, "they must file financial declarations no later than ten days before oral argument." *Id.*; RAP 18.1(c).

---

[3] For the same reasons, the error is harmless. *See Lavington v. Hillier*, 22 Wn. App. 2d 134, 148, 510 P.3d 373 (2022) (stating "an error is harmless when it does not materially affect the outcome of the trial"). Neither party discusses harmless error in their briefing.

Here, the finding of contempt was not error, and the issues Stanley appeals are limited in merit. Additionally, Stanley did not file the necessary financial affidavit as required by RAP 18.1(c). "An appellate court will not consider an award of attorney fees on appeal under RAP 18.1 and RCW 26.09.140 when a party seeking fees fails to comply with RAP 18.1(c)." *In re Marriage of Crosetto*, 82 Wn. App. 545, 565-66, 918 P.2d 954 (1996). We decline Stanley's request for attorney fees.

*B. Nancy's request*

Nancy requests fees under RCW 26.18.160 for the issues pertaining to the spousal maintenance enforcement action, and additional fees as sanctions for filing a frivolous appeal. RCW 26.18.160 provides that "[i]n any action to enforce a support or maintenance order under this chapter, the prevailing party is entitled to a recovery of costs, including an award for reasonable attorney fees." Nancy asserts that the "spousal support contempt actions were brought under RCW [sic] chapter 26.18" thus entitling her to fees. Br. of Resp't at 29. This argument fails for two reasons.

First, it appears that the contempt actions were brought under ch. 7.21 RCW concerning contempt of court, not ch. 26.18 RCW. *See* RCW 7.21.010. Second, ch. 26.18 RCW governs enforcement of child support. Nancy does not cite any case law supporting her argument that the statute also applies to enforcement of spousal support orders. Instead, each of the cases Nancy points to in support of her position pertain to

17

enforcement of child support orders. *See* Br. of Resp't at 29-31.[4] As such, Nancy fails to provide authority entitling her to fees on appeal under this statute.

Nancy also asks this court to award her attorney fees as a sanction against Stanley for filing a frivolous appeal. An appellate court may award attorney fees as sanctions when the opposing party files a frivolous appeal. RAP 18.9(a); *Advocs. for Responsible Dev. v. W. Wash. Growth Mgmt. Hr'gs Bd.*, 170 Wn.2d 577, 580, 245 P.3d 764 (2010). An appeal is frivolous if it "presents no debatable issues upon which reasonable minds might differ" and "is so devoid of merit that there is no possibility of reversal." *Id*. at 580. Close calls as to whether the appeal is frivolous are resolved in favor of the appellant. *Id*. If an appellant raises at least one debatable issue, the appeal is not frivolous, and attorney fees should not be awarded as sanctions. *Id*. at 580-81.

As a threshold matter, Nancy's request for frivolous attorney fees fails because she does not allege and argue that each of Stanley's issues are devoid of merit. Instead, she limits her argument to the issue regarding the characterization of the coin collection and the issue regarding compound interest.

Nancy argues that Stanley's challenge regarding the coin collection is frivolous because characterization of property is not a conclusion of law like he suggests; rather, it is a discretionary finding of fact and there is insufficient evidence to find the coins were a

---

[4] Citing *In re Marriage of Nelson*, 62 Wn. App. 515, 519-20, 814 P.2d 1208 (1991); *In re Marriage of Hunter*, 52 Wn. App. 265, 273-74, 758 P.2d 1019 (1988).

legal "inheritance." However, this argument presents an oversimplification of the analysis. Instead, "characterization of property is a mixed question of law and fact." *In re Marriage of Watanabe*, 199 Wn.2d 342, 348, 506 P.3d 630 (2022). On cross-examination, counsel asked Nancy, "Were those coins part of Stanley's inheritance from his father?" RP (Nov. 1-2, 2023) at 248. She answered, "He did receive those from his father, yes. I—him [sic] and I are co-trustees on that." RP (Nov. 1-2, 2023) at 248. This testimony, and the other scant evidence discussed above, suggests a debatable issue upon which reasonable minds can differ. *See Advocs. for Responsible Dev.*, 170 Wn.2d at 580. The appeal is not frivolous.

We affirm the superior court and deny both parties attorney fees on appeal.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, A.C.J.

WE CONCUR:

_____                    _____
Fearing, J.P.T.[†]                                  Cooney, J.

---

[†]George B. Fearing, a retired judge of the Washington State Court of Appeals, is serving as a judge pro tempore of this court pursuant to RCW 2.06.150(1).