177 P.3d 189 (2008)
In re the MARRIAGE OF Cheri Louise EKLUND, Appellant, and
Michael Allen EKLUND, Respondent.
No. 35518-3-II.
Court of Appeals of Washington, Division 2.
February 20, 2008.
*190 Patricia S. Novotny, Attorney at Law, Seattle, WA, Michael Von Roe, Attorney at Law, Vancouver, WA, for Appellant.
Brendan Finucane Patrick, Attorney at Law, Seattle, WA, for Respondent.
QUINN-BRINTNALL, J.
¶ 1 Cheri Eklund asked the Cowlitz County Superior Court to find her former husband, Michael Eklund, in contempt for violating the court-ordered parenting plan and interfering with her residential time with their child. The trial court entered a single contempt finding for six alleged violations and found that Michael had acted in bad faith when he intentionally failed to comply with the parenting plan's alternative care provision. Despite finding that Michael was in contempt and had acted in bad faith, the trial court declined to order (1) makeup time, (2) attorney fees and costs, or (3) the civil *191 penalty required under RCW 26.09.160. We affirm the trial court's single finding of contempt, but because the statutory penalties are mandatory, we reverse and remand with direction that the trial court impose these penalties in a manner consistent with this opinion and RCW 26.09.160(2)(b).

FACTS
¶ 2 Cheri and Michael[1] divorced when their son, N.E.,[2] was three years old. The final parenting plan was entered on February 22, 2002.
¶ 3 On July 18, 2006, Cheri moved for an order to show cause why Michael should not be found in contempt of that parenting plan for intentionally refusing to offer Cheri the first option to care for N.E. when Michael could not do so for at least four hoursthe plan's alternative care provision. Cheri asserted that Michael repeatedly violated the parenting plan's alternative care provision between June 25, 2005, and April 17, 2006, and that, as a result, she was deprived of nine overnights with N.E. to which she was entitled under the plan.
¶ 4 The parenting plan's alternative care provision provides:
If a parent scheduled to have the child is unable to do so for a period of at least four hours, that parent shall promptly notify the other parent and the other parent shall then have the option to care for the child while the normally-scheduled parent is absent. The child shall not be placed in daycare or with babysitters during the extended period of time that the other parent is available and agrees to provide the care. This does not eliminate the normallyscheduled parent's responsibility to arrange for alternative care when necessary.
Clerk's Papers (CP) at 5.
¶ 5 Michael admitted that he intentionally placed N.E. with his girl friend or N.E.'s grandmother without first offering Cheri the option of caring for N.E. as the plan required. But he argued that his failure to comply was not in bad faith because the trial court should find that N.E.'s maternal grandmother and Michael's girl friend were not day-care providers or baby-sitters. Michael also argued that, because his then live-in girl friend is now his wife, the record contained sufficient evidence to prove that he was not acting in bad faith by placing N.E. in her care.
¶ 6 Noting that the parties had not moved to modify the parenting plan to allow Michael's wife and N.E.'s grandmother to care for N.E., the trial court rejected Michael's argument and stated:
[A] spouse is not a babysitter. But I don't think that it is any kind of stretch or unusual interpretation to say that pretty much everybody else is, and it doesn't really matter to me if there's some sort of attenuated degree of consanguinity here that takes a chart to sort out. . . . They're family, they're related, but they're still babysitters.
Report of Proceedings at 12.
¶ 7 The trial court found that Michael acted in bad faith when he placed N.E. with the maternal grandmother or his girl friend without first offering Cheri the option of caring for N.E. when he was unable to do so for more than four hours and that he was in contempt of the parenting plan for this conduct. The trial court also found that the overnight visit N.E. had with friends was an ordinary life experience that did not violate the plan. Despite these findings, the trial court refused to impose the mandatory statutory penalties or order that Michael pay attorney fees and costs. Cheri appeals. Michael does not cross-appeal.
¶ 8 This appeal presents the following issues: (1) Did the trial court erroneously consolidate the separate violations of the parenting plan into a single finding of contempt? (2) Did the trial court err when it found Michael in contempt but declined to (a) order make-up residential time, (b) require Michael *192 to pay Cheri's attorney fees, and (c) impose statutory civil penalties? (3) Did the trial court err when it opined that the plan's optional residential provisions do not operate when Michael left N.E. in his new wife's care for more than four hours?
¶ 9 As to the first two issues, we hold that the trial court did not err by consolidating multiple violations of the parenting plan into a single contempt finding. But we hold that this finding required that the trial court order make-up residential time, require that Michael pay Cheri's attorney fees and costs, and impose the mandatory statutory civil penalties. As to the third issue, we decline to address the merits of the trial court's advisory oral ruling suggesting that, because Michael has remarried, he need not give Cheri the option of caring for N.E. before leaving him in his new wife's care. We are not unmindful of the practical problems created by the changing needs of all involved. But these issues must be addressed through a motion to modify the parenting plan, not in an advisory opinion from the trial court or this court.

ANALYSIS
Contempt Finding
¶ 10 Cheri alleged that Michael violated the parenting plan's alternate care provision on six separate occasions and that the trial court erred when it "collapsed" Michael's numerous violations into one finding of contempt. Br. of Appellant at 1. Michael asserts that Cheri never asked the trial court to enter multiple findings of contempt, but our review of the record belies this claim. During argument, Cheri's trial counsel repeatedly asked that the trial court find Michael had committed contempt nine times.
¶ 11 We review a trial court's decision in a contempt proceeding for an abuse of discretion. In re Marriage of James, 79 Wash.App. 436, 440, 903 P.2d 470 (1995). A trial court abuses its discretion by exercising it on untenable grounds or for untenable reasons. James, 79 Wash.App: at 440, 903 P.2d 470. We review the trial court's factual findings for substantial evidence. In re Marriage of Myers, 123 Wash.App. 889, 893, 99 P.3d 398 (2004). We do not review credibility determinations on appeal. In re Marriage of Rideout, 150 Wash.2d 337, 352, 77 P.3d 1174 (2003).
¶ 12 Here, the trial court found that Michael intentionally refused to comply with the parenting plan's alternative care provision six times by placing N.E. in the care of the grandmother or the girl friend for more than four hours without offering Cheri the first option to care for N.E. But it found that N.E.'s overnight visit with friends his own age was not a violation of the parenting plan's alternative care provision. Ultimately, the trial court found that the six violations resulted in a total of eight missed overnight visits with Cheri.
¶ 13 Cheri contends that the trial court erred in consolidating the six violations into one finding of contempt, in violation of RCW 26.09.160. She argues that nothing in the statute allows the trial court to consolidate separate instances into a single contemptuous act. We disagree.
¶ 14 In reviewing contempt violations concerning parenting plans, we strictly construe the parenting plan to see whether the alleged conduct constitutes "a plain violation" of the plan. In re Marriage of Humphreys, 79 Wash.App. 596, 599, 903 P.2d 1012 (1995).
¶ 15 Michael admitted that he intentionally allowed the biological grandmother and his then girl friend to care for N.E. on several occasions without giving Cheri the first option to care for him. Michael's actions clearly violated the parenting plan.[3]Humphreys, 79 Wash.App. at 599, 903 P.2d 1012. And substantial evidence supports the trial court's finding that. Michael intentionally violated the parenting plan. Rideout, 150 Wash.2d at 352, 77 P.3d 1174.
*193 ¶ 16 It is well within the trial court's discretion to hold that, when an initial petition alleges separate violations of a single court order, the incidents constitute a pattern of conduct that merges into a single finding of contempt when these acts are simultaneously declared to violate the order. See, e.g., Rideout, 150 Wash.2d at 348, 77. P.3d 1174 (a single finding of contempt for multiple violations); Myers, 123 Wash.App. at 892, 99 P.3d 398 (a single finding of contempt for multiple violations). Statutory remedies for violating a parenting plan apply only after the trial court decides that the violator acted in bad faith and enters a finding of contempt. RCW 26.09.160(2)(b). A failure to comply with the alternative care provision cannot be construed as an act of contempt of the court's parenting plan until adjudicated. Because the trial court simultaneously adjudicated all the instances of Michael's noncompliance, no finding is prior to any other and the trial court did not abuse its discretion by merging them into a single finding of contempt.
Penalties Under RCW 26.09.160
¶ 17 Cheri contends that, after the trial court found that Michael violated the parenting plan in bad faith, RCW 26.09.160(2)(b) required that it impose makeup residential time, civil penalties, and attorney fees.[4] We agree that the RCW 26.09.160(2)(b) penalties are mandatory and the trial court erred by refusing to order make-up time. We also agree that a monetary penalty is required. But we hold that only the penalty for a first-time contempt finding is appropriate. And, in a separate portion of this opinion, we award Cheri reasonable attorney fees fol. bringing this action.
¶ 18 Although he did not file a cross-appeal, Michael argues that the trial court erroneously interpreted the word "baby-sitter" too broadly to include his girl friend and the child's grandmother. He contends that, as a result, the contempt finding was error and we should not compound the error by reversing the trial court's decision not to impose statutory penalties for the erroneous contempt finding.[5] Having held that the trial court's finding of contempt was proper, we agree with Cheri that the trial court erred in refusing to impose the mandatory statutory penalties for the intentional violations of the parenting plan's alternate care provision.
¶ 19 Generally, the appropriate punishment for contempt lies within the discretion of the trial court finding the contempt and we will not disturb its decision absent an abuse of that discretion. Moreman v. Butcher, 126 Wash.2d 36, 40, 891 P.2d 725 (1995). But RCW 26.09.160 controls penalties for parenting plan violations.
¶ 20 A parent seeking a contempt order to compel another parent to comply with a parenting plan must establish the contemnor's bad faith by a preponderance of the evidence. James, 79 Wash.App. at 442, 903 P.2d 470. If the trial court finds that a parent has, in bad faith, failed to comply with the parenting plan, "the court shall find the parent in contempt of court." RCW 26.09.160(2)(b) (emphasis added). "Upon a finding of contempt, the court shall order" the contemnor (1) to provide additional visitation *194 time to make up for the missed time, (2) pay the other parent's attorney fees and costs, and (3) pay the other parent a penalty of at least $100. RCW 26.09.160(2)(b)(i)-(iii) (emphasis added). At its discretion, "the court may also order the parent to be imprisoned." RCW 26.09.160(2)(b) (emphasis added).
¶ 21 Other than sending a parent to jail, the punishments for contempt for intentionally violating a parenting plan in bad faith are mandatory. See In re Marriage of Rideout, 110 Wash.App. 370, 376, 40 P.3d 1192 (2002), aff'd, 150 Wash.2d 337, 77 P.3d 1174 (2003); In re Marriage of Wolk, 65 Wash.App. 356, 359, 828 P.2d 634 (1992) (construed the word "shall" in RCW 26.09.160(2)(b) to be mandatory and, thus, if the trial court finds a party in contempt, it must order the noncomplying party to pay the moving party as enumerated in RCW 26.09.160(2)(b)(ii) and (iii)).
¶ 22 Here, the trial court found that Michael intentionally failed to comply with the parenting plan and that the violation was in bad faith. Despite finding Michael in contempt, the trial court declined to order him to pay any penalties, finding that because Cheri is "estranged from heir] family, [and Michael] permitted overnight visits with the maternal grandmother to maintain their close relationship . . . it is appropriate that no fees or penalty be imposed." CP at 35. But the trial court lacks authority to enter findings that conflict with the statute.
¶ 23 As discussed above, the plain language of the statute is clear. Wolk, 65 Wash.App. at 359, 828 P.2d 634. The statute mandates that the trial court order the noncomplying party to make up all the missed residential time, as well as to pay the court costs and reasonable attorney fees of the parent forced to bring an action to enforce the parenting plan, and a civil penalty. RCW 26.09.160(2)(b)(i)-(iii).
¶ 24 In this case, the trial court found that Michael had violated the parenting plan in bad faith on six occasions and ruled that he was in contempt of the court's parenting plan order. This finding was Michael's first contempt finding where the trial court was required to impose a civil penalty of not less than $100. RCW 26.09.160(2)(b)(iii).[6] The statute also mandates a harsher civil penalty for a second finding of contempt within three years of the first finding. RCW 26.09.160(3).[7] Here, the, trial court found the violations simultaneously and had not previously found Michael in contempt. Accordingly, there was no previous finding of contempt and the first-time penalty of not less than $100 was appropriate. Cf. State v. Smith, 74 Wash.App. 844, 853-54, 875 P.2d 1249 (1994) (generally, when defendant is sentenced for multiple convictions at the same proceeding, the convictions are considered "current offenses"[8] and the sentences imposed must be concurrent, unless the sentencing court determines that there are grounds for an exceptional sentence), review denied, 125 Wash.2d 1017, 890 P.2d 19 (1995).
¶ 25 The statute also mandates that, upon a contempt finding, the trial court must order: "[t]he noncomplying parent to provide *195 the moving party additional time with the child. The additional time shall be equal to the time missed with the child, due to the parent's noncompliance." RCW 26.09.160(2)(b)(i). Michael did not have the authority under the court's parenting plan to deprive Cheri of residential time with her child so that Michael could foster the child's relationship with his girl friend or other relatives he preferred. We are not unmindful of the disruption the alternative care provisions of the parenting plan will likely cause in the future, but the proper remedy is for the parties to file a motion to modify the plan to more reasonably fit the child's needs rather than to ask the trial court or this court to interpret the plan's unambiguous language.
¶ 26 Here, the trial court found that Michael improperly deprived Cheri of the society of her child for multiple[9] days. Therefore, the trial court was required to enter an order requiring makeup visitation time equal to the actual time missed. RCW 26.09.160(2)(b)(i).[10]
Attorney Fees
A. At Trial
¶ 27 Cheri asserts that the trial court erred when it failed to award her reasonable trial attorney fees and asserts that the attorney fees were non-discretionary and required under RCW 26.09.160(2). Again, we agree.
¶ 28 Here, the trial court found that Michael was in contempt of its parenting plan but declined to award Cheri attorney fees and costs necessary to obtain Michael's compliance with the plan. As discussed above, state law requires that the trial court order a party in contempt to pay all court costs and reasonable attorney fees of the moving party in a proceeding to enforce compliance with a court-ordered parenting plan.[11] RCW 26.09.160(2)(b)(ii). See In re Parentage of Schroeder, 106 Wash.App. 343, 353-54, 22 P.3d 1280 (2001) (While the statute dictates that the conternnor must pay reasonable attorney fees and all court costs, the amount of attorney fees is within the trial court's discretion. But the attorney fees must relate to the costs of bringing the current contempt proceedings).
B. On Appeal
¶ 29 Cheri also asks that we award her attorney fees on appeal pursuant to RAP 18.1 and RCW 26.09.160(2)(b)(ii). We agree that such fees are required. Because Michael failed to comply with the alternate care provision of the court-ordered parenting plan in bad faith, he is responsible for paying reasonable attorney fees and costs that Cheri incurred to enforce the court's order. Accordingly, we award her attorney fees and costs in an amount to be determined by the commissioner of this court upon her compliance with the provisions of RAP 18.1. RCW 26.09.160(1), (2)(b)(ii); Rideout, 150 Wash.2d at 359, 77 P.3d 1174.
¶ 30 We affirm the trial court's single finding of contempt, but we reverse and remand for entry of an order awarding Cheri eight days of make-up time, court costs and reasonable attorney fees, and imposing an appropriate civil penalty for a first-time contemnor in accordance with RCW 26.09.160(1), (2)(b)(i), (ii), and (iii), and this opinion.
We concur: ARMSTRONG, J., and VAN DEREN, A.C.J.
NOTES
[1] We refer to the parties by their first names for clarity.
[2] N.E. was born on May 25, 1998. Because of the nature of this case, some confidentiality is appropriate. Accordingly, this court has determined, pursuant to RAP 3.4, that the name of the child will not be used in this opinion.
[3] Michael makes a blanket assertion that the trial court erred when it interpreted "baby-sitter" to include any person, including relatives, other than the parent. But he does not provide any legal authority or evidence to support his assertion and we do not address the merits of this argument. RAP 10.3(b). We note that a motion to modify the parenting plan is the appropriate method to address Michael's concerns regarding his ability to comply with the plan as N.E. grows.
[4] RCW 26.09.160(2)(b) provides:

If, based on all the facts and circumstances, the court finds after hearing that the parent, in bad faith, has not complied with the order establishing residential provisions for the child, the court shall find the parent in contempt of court. Upon a finding of contempt, the court shall order:
(i) The noncomplying parent to provide the moving party additional time with the child. The additional time shall be equal to the time missed with the child, due to the parent's noncompliance;
(ii) The parent to pay, to the moving party, all court costs and reasonable attorneys' fees incurred as a result of the noncompliance, and any reasonable expenses incurred in locating or returning a child; and
(iii) The parent to pay, to the moving party, a civil penalty, not less than the sum of one hundred dollars.
The court may also order the parent to be imprisoned in the county jail, if the parent is presently able to comply with the provisions of the court-ordered parenting plan and is presently unwilling to comply. The parent may be imprisoned until he or she agrees to comply with the order, but in no event for more than one hundred eighty days.
(Emphasis added.)
[5] Michael's attorney drafted the parenting plan adopted by the trial court in this case.
[6] RCW 26.09.160(2)(b)(iii) provides, "The parent to pay, to the moving party, a civil penalty, not less than the sum of one hundred dollars."
[7] RCW 26.09.160(3) provides:

On a second failure within three years to comply with a residential provision of a courtordered parenting plan, a motion, may be filed to initiate contempt of court proceedings according to the procedure set forth in subsection (2)(a) and (b) of this section. On a finding of contempt under this subsection, the court shall order:
(a) The noncomplying parent to provide the other parent or party additional time with the child. The additional time shall be twice the amount of the time missed with the child, due to the parent's noncompliance;
(b) The noncomplying parent to pay, to the other parent or party, all court costs and reasonable attorneys' fees incurred as a result of the noncompliance, and any reasonable expenses incurred in locating or returning a child; and
(c) The noncomplying parent to pay, to the moving party, a civil penalty of not less than two hundred fifty dollars.
The court may also order the parent to be imprisoned in the county jail, if the parent is presently able to comply with the provisions of the court-ordered parenting plan and is presently unwilling to comply. The parent may be imprisoned until he or she agrees to comply with the order but in no event for more than one hundred eighty days.
[8] As defined in RCW 9,94A.589(1).
[9] The six violations resulted in a total of eight missed overnight visits.
[10] Upon a finding of contempt, the court shall order: "The noncomplying parent to provide the moving party additional time with the child. The additional time shall be equal to the time missed with the child, due to the parent's noncompliance." RCW 26.09.160(2)(b)(i),
[11] Michael mistakenly argues that die trial court should not award Cheri attorney fees at all because she did not prevail on all the issues she raised at the trial court. But the relevant statute does not require Cheri to prevail. Its only requirement is a finding of contempt. The trial court shall order the parent found in contempt to pay "all court costs and reasonable attorneys' fees incurred as a result of the noncompliance." RCW 26.09.160(2)(b)(ii).