# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| TOMI L. WINTERS, f/k/a INGERSOLL, | No. 50959-8-II |
| Respondent, | |
| v. | |
| JOHN P. INGERSOLL, | PART PUBLISHED OPINION |
| Petitioner. | |

LEE, A.C.J. — In 2016, the superior court entered a final parenting plan regarding John P. Ingersoll's and Tomi L. Winters's (f/k/a Ingersoll) children. Beginning in the summer of 2017, the superior court heard several motions for contempt regarding the provisions of the parenting plan. And, in 2018, due to a child welfare proceeding initiated in Alaska, the superior court relinquished its jurisdiction to the Alaska superior court. Ingersoll appeals some of the superior court's contempt hearing orders and the superior court's order relinquishing jurisdiction to the Alaska superior court. In the published portion of this opinion we reverse the superior court's order relinquishing jurisdiction to Alaska. In the unpublished portion of this opinion, we affirm the superior court's contempt hearing orders.

## FACTS

On June 15, 2016, the superior court entered a final parenting plan for Ingersoll's and Winters's children, KAI and FMI. By the time the final parenting plan was entered, Winters and

the children had moved to Alaska.  *See In re the Marriage of Ingersoll v. Ingersoll*, noted at 200

Wn. App. 1070 (Oct. 17, 2017), *review denied*, 190 Wn.2d 1010 (2018).  Ingersoll had residential

time with the children during certain school breaks and for six weeks during the school summer

break.  The parenting plan provided for weekly, half-hour video visits with the children for

Ingersoll during the school year.  And the parenting plan provided for Ingersoll to visit with the

children in Alaska for no more than 7 days in any 90 period during the school year.

The events giving rise to the current appeal began on May 19, 2017, when Ingersoll filed

a motion for contempt against Winters.  Ingersoll asserted that Winters failed to comply with the

residential provisions of the parenting plan because Winters did not send KAI to Washington for

Ingersoll's summer residential time.  Although Winters successfully sent FMI to Washington for

Ingersoll's summer residential time, Winters claimed she made several attempts to get KAI to the

airport, but KAI refused to leave.  Despite Winters imposing consequences on KAI's refusal to

travel to Washington, KAI still refused to leave Alaska for residential time with Ingersoll.  On

June 19, a superior court commissioner found that Winters did not act in bad faith and did not hold

Winters in contempt.[1]

On June 28, the day before FMI was scheduled to return to Alaska, Ingersoll filed a motion

for a temporary restraining order to protect FMI from Winters.  The motion alleged that the

restraining order was necessary because Winters allowed KAI to download sexually explicit

animated reading materials.  The motion also alleged that KAI had been physically abusing FMI,

and Winters was unable to protect FMI or control KAI's behavior.  Ingersoll stated that he had

---

[1] Ingersoll has not assigned error to this contempt order.

reported these allegations to the Alaska Office of Children's Services (OCS). OCS initiated an investigation into the allegations. A superior court commissioner denied the motion for a temporary restraining order because the commissioner did not believe he had authority to enter an order modifying a parenting plan when there was no pending action to modify the parenting plan. And the commissioner noted that if there was an actual emergency or imminent harm, Child Protective Services or law enforcement had the ability to take immediate action, which they had not done.

On July 5, Winters filed a motion for contempt against Ingersoll based on Ingersoll's failure to return FMI to Alaska.

On July 12, Ingersoll filed a second motion for a restraining order requesting the same relief and based on the same grounds as the June 28 motion for a restraining order. At the August 7 hearing on the motion for a restraining order, Ingersoll clarified that he was asking for the parenting plan to be suspended, but did not intend to seek changes to the final parenting plan. The superior court commissioner denied Ingersoll's motion for a temporary restraining order. The commissioner stated that she had reviewed all of Ingersoll's materials and determined that Ingersoll's motion was based on facts "that the Court has previously had an opportunity to review." Verbatim Report of Proceedings (VRP) (August 7, 2017) at 7.

On August 8, the same superior court commissioner who heard Ingersoll's August 7 motion for a temporary restraining order found Ingersoll in contempt for failing to return FMI to Alaska. The commissioner found,

> I don't know that there's any way that Mr. Ingersoll can support the claim that he is acting in good faith. He has been before this Court a number of times and this

Court continues to repeat to him what it is that he needs to do, whether it's a denial of the relief that's [sic] he's requesting, or it's in our hearing from yesterday, and yet still we find ourselves here today with him not having returned the child.

This is my finding for the contempt. He had the ability to follow the Court's order. His failure to follow the Court's order and return the child was intentional. He acted in bad faith. He has the ability to follow the Court's Order now. He must follow the Court's Order now. He must, and my ruling is, that . . . [t]he child needs to be at the airport on that flight and returned today.

VRP (August 8, 2017) at 32-33.

Ingersoll filed motions to revise the commissioner's orders denying his motions for a temporary restraining order and finding Ingersoll in contempt. The superior court denied both of Ingersoll's motions to revise. During the hearing, Ingersoll argued to the court that the commissioner improperly found that he acted in bad faith because the merits of his concerns were never addressed by the court and he was making a good faith effort to protect FMI. The superior court judge stated, "I think it was in bad faith, given the history of the case." VRP (Sept. 1, 2017) at 18.

On August 29, Ingersoll filed another motion for contempt alleging that Winters failed to provide video visits as required by the parenting plan on August 13, 20, 25, and 27. Winters responded by filing a declaration explaining the circumstances regarding the missed video visits. First, Winters explained that no video visit was required on August 13 because the parenting plan required video visits during the school year and the school year had not started yet. For the calls on August 20 and 27, Winters asserted that, despite encouragement and consequences, the children refused to engage in video visits with Ingersoll. And the August 25 video visit (the scheduled

make-up for the August 20 video visit) failed due to problems with the internet connection. The August 27 video visit was successfully made up on September 1.

Winters also declared that she had concerns regarding Ingersoll's upcoming in-person visit scheduled for September 28 because of the ongoing Alaska OCS investigation Ingersoll initiated in June based on the allegations of access to sexually explicit material and KAI's physical abuse toward FMI. Winters explained that, on September 25, OCS had sent her communications indicating significant concerns about the children having contact with Ingersoll. And OCS demanded information regarding how Winters intended to keep the children safe during any contact with Ingersoll. Winters stated that, based on this communication with OCS, she was attempting to obtain more information about OCS's concerns and expectations.

Ingersoll struck the motion for contempt, originally noted for September 29, and renoted the motion for November 17. Before the November 17 motion hearing, Winters filed another declaration with additional information regarding the OCS investigation. Winters stated that on October 13, OCS filed a petition in the Alaska courts alleging that KAI and FMI were "Children in Need of Aid (CINA)," which is the substantial equivalent of Washington dependency proceedings. Clerk's Papers (CP) at 661. Winters also stated that two domestic violence protection orders were entered by the Alaska courts. On September 28, 2017, the Alaska courts extended an already existing domestic violence protection order, which did not include the children. On October 13, the Alaska courts entered a domestic violence protection order prohibiting contact between Ingersoll and the children. On November 17, the superior court found that Winters complied with the parenting plan with regard to the four missed visits in August.

On November 30, Ingersoll filed another motion for contempt based on Winters's refusal to (1) allow the in-person visit scheduled for September 28, and (2) provide any video visits after September 29. Winters filed another declaration stating that she refused to allow the in-person visit and stopped the video visits as a result of the OCS investigation and pending CINA petition.

On December 19, the superior court found that Winters failed to comply with the parenting plan. However, the superior court found that Winters's failure to comply was not in bad faith because of the OCS investigation and CINA petition. Therefore, the superior court did not find Winters in contempt. And the superior court found that Winters was entitled to attorney's fees because Ingersoll's motion was brought without a reasonable basis.

On May 9, 2018, the superior court's judicial assistant emailed the parties and informed them that the Alaska superior court judge had requested a hearing under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), chapter 26.27 RCW, because Ingersoll had filed a motion to dismiss the Alaska CINA proceedings or, alternatively, communicate with the Washington courts regarding jurisdiction. The email to the parties stated,

> I received a call today from Judge Kauvar in Alaska. She was requesting a UCCJEA hearing on this matter as Mr. Ingersoll's attorney has filed a jurisdictional motion in Alaska.
>
> A UCCJEA hearing has been set for Thursday May 17th at 9:30 a.m. in courtroom 822. Parties will not have a speaking role but may attend the hearing as well as provide pleadings.

CP at 798. Winters did not file anything prior to the UCCJEA hearing.

After receiving the superior court's emailed message, Ingersoll emailed the court requesting clarification regarding the hearing, expressing his belief that any issue in the case was

related to jurisdiction. The court did not provide any additional clarification regarding the hearing. Ingersoll also requested that any Alaska court documents provided to the superior court be filed for consideration.

The record shows that the superior court had a copy of Ingersoll's motion to dismiss filed in the Alaska superior court. Ingersoll's motion alleged that Washington had exclusive, continuing jurisdiction over any child custody proceeding involving KAI and FMI, and argued that the Alaska court must dismiss its proceedings and leave the case to Washington. The superior court also had a copy of Winter's response asserting that Alaska properly exercised temporary emergency jurisdiction over the children.

The record also shows that the superior court had documents filed by the Alaska attorney general, wherein it argued that the Alaska superior court properly exercised temporary emergency jurisdiction. The Alaska attorney general also noted that, while temporary emergency jurisdiction was appropriate, the UCCJEA required the Alaska court to communicate with the Washington court regarding resolutions of the emergency, the safety of the children, and the duration of any temporary orders.[2]

---

[2] The temporary emergency jurisdiction provision of the UCCJEA codified in Washington provides,

> A court of this state that has been asked to make a child custody determination under this section, upon being informed that a child custody proceeding has been commenced in, or a child custody determination has been made by, a court of a state having jurisdiction under RCW 26.27.201 through 26.27.221, shall immediately communicate with the other court. A court of this state that is exercising jurisdiction pursuant to RCW 26.27.201 through 26.27.221, upon being informed that a child custody proceeding has been commenced in, or a child custody determination has been made by, a court of another state under a statute

The record further shows a response to Ingersoll's motion to dismiss filed by the children's guardian ad litem (GAL) in Alaska asserting that Alaska properly asserted temporary emergency jurisdiction.[3] Finally, in his response, Ingersoll maintained his request to have the Alaska court dismiss the case and he noted that if the Alaska court exercised temporary emergency jurisdiction it must communicate with the Washington court as required by the temporary emergency jurisdiction statute.

On May 17, 2018, the Washington superior court held a UCCJEA hearing to confer with Judge Kauvar of the Alaska Superior court. The Washington superior court recognized that it had

---

similar to this section shall immediately communicate with the court of that state to resolve the emergency, protect the safety of the parties and the child, and determine a period for the duration of the temporary order.

RCW 26.27.231(4). Alaska's statute contains the same procedural requirements. AS 25.30.330(d).

[3] In the facts section of the Alaska GAL's brief, the Alaska GAL explains the state of the Washington contempt proceedings as part of explaining the current state of the Washington case to the Alaska courts and states,

Once this appeal [of the Washington contempt order] is concluded, and if no further appeal is taken and/or possible, Ms. Winters may then take steps to either (1) modify the existing Washington custody orders and parenting plan to fully protect the children, or (2) seek to move the custody proceedings to Alaska using the inconvenient forum provisions of the UCCJEA.

CP at 802. This is the only mention of the inconvenient forum provision of the UCCJEA in the Alaska pleadings. Winters implies that the GAL raised the issue of inconvenient forum and urged the Alaska court to confer with the Washington court regarding the issue. But this statement is misleading. The GAL clearly referenced the inconvenient forum provision as something that could be used by Winters in the future. The GAL was not encouraging the Alaska court to ask the Washington court to relinquish jurisdiction under the inconvenient forum provision. And the GAL's reference to a conference between the Washington and Alaska courts referred to the conference required by the temporary emergency jurisdiction provision of the UCCJEA, not the inconvenient forum provision.

jurisdiction over child custody proceedings because it entered the final parenting plan; however, it asked for the Alaska superior court's opinion on whether Washington had become an inconvenient forum. Judge Kauvar explained her position:

> Well, the children have been living in Alaska since 2014. And the jurisdiction Alaska took, most recently, was in the Child in Need of Aid case, and they took it on the basis of an emergency. And that case is still proceeding. So the — Alaska believes at this time that if Washington, even though it had initial jurisdiction, would allow Alaska to have jurisdiction, Alaska is the place where the children and the mother reside and they have been residing. They have seen counselors in Alaska and are going to school in Alaska. So the information right now, I believe, regarding the children is basically in Alaska. They have been appointed guardian[s] ad litem[] in Alaska, and the mother has an attorney in Alaska.

VRP (May 17, 2018) at 4-5. The Washington superior court agreed with Judge Kauvar's statement, recognized that the only proceedings that had been pending in Washington courts were contempt hearings, and agreed that it would be appropriate to give up jurisdiction to Alaska. After the court had made its decision, Ingersoll asked to make an objection for the record. The court refused and stated that there would not be a record made by anyone else.

Following the UCCJEA conference between the Washington and Alaska judges, the Washington court entered findings of fact and conclusions of law relinquishing jurisdiction to Alaska.

Ingersoll appeals.

## ANALYSIS

Ingersoll appeals the superior court's order relinquishing jurisdiction to the Alaska superior court, arguing that the superior court failed to provide him with meaningful notice and opportunity

to be heard as required by the UCCJEA.[4]  Specifically, Ingersoll contends that the superior court's email notice to the parties did not adequately inform the parties of the subject of the hearing, and therefore, the superior court's opportunity to provide briefing or additional pleadings was not meaningful because the parties were not aware of the issues that should be addressed by the pleadings.  We agree and reverse the superior court's order relinquishing jurisdiction to Alaska.

A.     RELINQUISHING JURISDICTION UNDER THE UCCJEA

The UCCJEA's inconvenient forum provision provides,

(1) A court of this state which has jurisdiction under this chapter to make a child custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum.  The issue of inconvenient forum may be raised upon motion of a party, the court's own motion, or request of another court.
(2) Before determining whether it is an inconvenient forum, a court of this state shall consider whether it is appropriate for a court of another state to exercise jurisdiction.  For this purpose, the court shall allow the parties to submit information and shall consider all relevant factors, including:
(a) Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;
(b) The length of time the child has resided outside this state;
(c) The distance between the court in this state and the court in the state that would assume jurisdiction;
(d) The relative financial circumstances of the parties;
(e) Any agreement of the parties as to which state should assume jurisdiction;
(f) The nature and location of the evidence required to resolve the pending litigation, including testimony of the child;

---

[4]  Ingersoll references constitutional procedural due process by citing to the procedural due process requirements established by *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).  However, because we decide that the superior court failed to comply with the statutory requirements of the UCCJEA, we decline to address any potential constitutional argument raised by Ingersoll.  *State v. Tingdale*, 117 Wn.2d 595, 599, 817 P.2d 850 (1991) (An appellate court will not decide a constitutional issue when the case can be decided on other grounds.).

> (g) The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and
> (h) The familiarity of the court of each state with the facts and issues in the pending litigation.

RCW 26.27.261.

Ingersoll asserts that, in addition to the statutory requirements of RCW 26.27.261, the court must also comply with the notice requirements for motions under CR 7 before making a determination regarding relinquishing jurisdiction as an inconvenient forum. Under CR 7(b)(1), motions "shall state with particularity the grounds therefor, and shall set forth the relief or order sought." RCW 26.27.261(1) states that the issue of inconvenient forum is raised by a motion; therefore, we agree with Ingersoll that CR 7 applies.

Here, the superior court informed the parties that the UCCJEA hearing would be held on May 17 and that they had the opportunity to file pleadings. However, given the procedural posture of this case, it was unclear what the subject of the hearing would be. The Alaska court had asserted jurisdiction under the temporary emergency jurisdiction provision of the UCCJEA, RCW 26.27.231. And the Alaska court requested the conference with the Washington court. Based solely on that information, it is unclear whether (1) Alaska would ask Washington to relinquish jurisdiction, (2) Alaska and Washington would discuss terms of the temporary emergency jurisdiction under RCW 26.27.231(d), or (3) Washington would ask Alaska to relinquish jurisdiction. And it was unclear which court would be making a jurisdictional determination. Moreover, despite requesting clarification regarding the hearing, the Washington superior court did not provide Ingersoll with any additional information. And the superior court refused to allow Ingersoll to state his objections for the record at the hearing.

11

Moreover, there were no motions filed to have Washington relinquish jurisdiction as an inconvenient forum. Although the request came from the Alaska superior court, the request arose from Ingersoll's motion to dismiss the Alaska proceedings based on improper exercise of jurisdiction when Washington continued to have exclusive jurisdiction—it was not based on the inconvenient forum provision of the UCCJEA. And the responses to Ingersoll's motion addressed the exercise of temporary emergency jurisdiction. Therefore, the superior court email stating that the hearing was based on the Alaska superior court's request resulting from Ingersoll's motion to dismiss cannot be considered adequate to identify the hearing as a motion to consider whether Washington should relinquish jurisdiction because it is an inconvenient forum.

The motions filed in the Alaska court suggested that the conference would consider the requirements of the temporary emergency jurisdiction statutes, which required communication regarding resolution of the emergency, the safety of the children, and the duration of any temporary orders. The consideration of temporary emergency jurisdiction is substantively different from the consideration of inconvenient forum. Therefore, the parties were not provided an opportunity to provide information or briefing on the issues determined by the courts. Accordingly, the superior court failed to comply with the requirements of RCW 26.27.261(2).

B.    COMMUNICATIONS BETWEEN COURTS

Ingersoll also asserts that the Washington superior court violated RCW 26.27.101(2), governing communications between the courts. We agree.

The provision governing communications between courts requires that the parties are either allowed to participate in the communication or "they must be given the opportunity to present facts

and legal arguments before a decision on jurisdiction is made." RCW 26.27.101(2). Whether Ingersoll was able to participate in the communication by merely attending the conference is a question of statutory interpretation. We review questions of statutory interpretation de novo. *State v. Alvarado*, 164 Wn.2d 556, 561, 192 P.3d 345 (2008).

Our primary purpose in statutory interpretation is to determine and enforce legislative intent. *Id.* at 561-62. "Where the plain meaning of statutory language is plain on its face, we must give effect to that plain meaning as an expression of legislative intent." *Id.* at 562. To determine the statute's plain meaning, we consider the entire statute in which a provision is found, in addition to related statutes or other provisions in the same act. *Id*. We may use dictionaries to discern the plain meaning of terms with "well-accepted, ordinary" meanings. *Id*.

Participate means "to take part in something . . . [usually] in common with others." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 1646 (1961). "To take part in" indicates some form of action rather than passive attendance. Therefore, a plain language analysis of the statute shows that the legislature intended "participate" to mean something more than just being permitted to attend the communication.

Here, although the court allowed the parties the opportunity to submit pleadings, there was no indication that the Washington court would be considering relinquishing jurisdiction under the UCCJEA's inconvenient forum provision. Rather, because the motion to dismiss in Alaska addressed the requirements for a conference under the temporary emergency jurisdiction provisions, the parties had no way of knowing that there would be reason to submit information or legal arguments on the merits of relinquishing jurisdiction under the inconvenient forum provision.

In essence, the parties were provided the opportunity to merely attend the conference between the Washington and Alaska superior court judges without being permitted to speak or offer information or legal argument. Therefore, we conclude that the superior court also failed to comply with the notice requirements under the UCCJEA before making its decision to relinquish jurisdiction to Alaska.

We reverse the superior court's order relinquishing jurisdiction to Alaska and remand for a hearing on whether Washington is an inconvenient forum. The parties shall be afforded an opportunity to submit information and provide briefing before a determination on jurisdiction based on inconvenient forum is made.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

ANALYSIS

Ingersoll argues that the superior court abused its discretion by finding Ingersoll in contempt for failing to return FMI to Alaska at the end of summer visitation. Ingersoll also argues that the superior court abused its discretion by finding that Winters was not in contempt by failing to provide visitation. We affirm the superior court's contempt hearing orders.

We review a superior court's decision in a contempt hearing for an abuse of discretion. *In re Marriage of Eklund*, 143 Wn. App. 207, 212, 177 P.3d 189 (2008). A superior court abuses its discretion by basing a decision on untenable grounds or untenable reasons. *Id.* "A parent seeking a contempt order to compel another parent to comply with a parenting plan must establish the

14

contemnor's bad faith by a preponderance of the evidence." *Id*. at 215. We do not review the trial court's credibility determinations on appeal. *Id*. at 212.

A.    INGERSOLL'S REFUSAL TO RETURN FMI TO ALASKA[5]

Ingersoll argues that the superior court abused its discretion by finding Ingersoll in contempt on August 8 for failing to return FMI to Alaska at the end of his summer residential time. We disagree.

Ingersoll contends that because there was an ongoing Alaska OCS investigation into his allegations regarding the potential abuse of FMI, it was an abuse of discretion for the superior court to fail to consider the factual basis for his abuse allegations in determining he had acted in bad faith for failing to return FMI to Alaska. But the trial court had no obligation to decide the merits of Ingersoll's allegations of abuse to the Alaska OCS. At the time of the contempt hearing, no determination had been made regarding Ingersoll's allegations. Therefore, the superior court's contempt determination was essentially a credibility determination regarding whether Ingersoll acted in bad faith by refusing to return FMI to Alaska while OCS investigated the merits of his allegations. We will not disturb credibility determinations on appeal.

Here, Ingersoll did not return FMI as required by the parenting plan. There was no court order (by either Washington or Alaska) that justified refusing to obey the parenting plan. And

---

[5]  Ingersoll also appears to argue that the superior court commissioner erred by denying his request for temporary restraining orders. Because FMI has been returned to Alaska, the orders on the motions for temporary restraining orders are moot. *Westerman v. Cary*, 125 Wn.2d 277, 286, 892 P.2d 1067 (1994) (A case is moot when the court can no longer provide effective relief.). Therefore, we do not consider the merits of Ingersoll's argument regarding the commissioner's orders on Ingersoll's motions for temporary restraining orders.

Ingersoll did not take any action to actually modify the parenting plan. Therefore, the critical factor in the contempt proceeding was the superior court's credibility determination regarding Ingersoll's concerns underlying the allegations. The superior court apparently did not find Ingersoll credible, and we do not review that determination. Accordingly, we affirm the August 8 contempt hearing order.

Ingersoll also alleges that there was no basis for a bad faith finding because the superior court had not ruled on the merits of his motions for a restraining order. We disagree.

Whether the superior court had ruled on the merits or not, Ingersoll's request to keep FMI in Washington past the term authorized by the parenting plan was denied. And Ingersoll's concerns were being addressed by an ongoing Alaska OCS investigation into Ingersoll's allegations. Essentially, Ingersoll's argument is that, because he did not agree with superior court's resolution of his concerns, he was justified in refusing to comply with the parenting plan until his concerns were addressed to his satisfaction. But the fact that Ingersoll did not like the superior court's orders or the way the superior court addressed his concerns, does not establish that Ingersoll was acting in good faith.

Even if Ingersoll had a good faith belief in the concerns he expressed to the superior court, his refusal to comply with the superior court's order was not based on a good faith attempt to comply with the parenting plan or a good faith belief that he was acting legally. Therefore, the superior court did not abuse its discretion by finding that Ingersoll acted in bad faith by refusing to return FMI to Alaska.

B.      WINTERS'S WITHHOLDING VISITATION

First, Ingersoll argues that the superior court abused its discretion by determining that Winters did not fail to obey the parenting plan when Winters withheld visitation based the Alaska OCS's actions.  Ingersoll asserts this was an abuse of discretion because both the superior court and Winters should have known that the Alaska court orders were void under the UCCJEA.  But Alaska superior courts had the ability to initiate child welfare proceedings based, at least in part, on Ingersoll's own allegations to the Alaska OCS.  *See* RCW 26.27.231; AS 25.30.330.  Therefore, the superior court did not abuse its discretion by determining that Winters was unable to comply with the parenting plan due to OCS's instructions to Winters and the temporary orders entered by the Alaska superior court.

Second, Ingersoll argues that the superior court abused its discretion by finding that Winters did not intentionally fail to obey the parenting plan in regards to the August video visitations.  But whether Winters intentionally disobeyed the parenting plan was based on credibility determinations regarding whether the children were refusing to participate in the video visits or whether Winters refused to allow the children to participate in the visits.  We do not review credibility determinations.  Accordingly, the superior court did not abuse its discretion by finding Winters did not intentionally fail to comply with the parenting plan regarding the missed August video visits.

Third, Ingersoll argues that the superior court abused its discretion by finding that Ingersoll brought his motion for contempt without a reasonable basis.  Ingersoll's argument is based entirely on his assertion that the Alaska proceedings are void, and therefore, there was no justification for

Winters to obey the Alaska court orders. But as explained above, the superior court did not abuse its discretion by finding that Winters was justified in obeying the Alaska court orders. Therefore, the superior court did not abuse its discretion by finding Ingersoll brought his contempt motion without a reasonable basis.

The superior court did not abuse its discretion by finding that Ingersoll was in contempt for failing to return FMI to Washington or in finding that Winters was not in contempt for failing to provide visitation. Therefore, we affirm the superior court's contempt hearing orders.

ATTORNEY FEES ON APPEAL

Both parties request attorney fees on appeal. Ingersoll requests attorney fees on appeal under RCW 26.09.160(2)(b), which allows for attorney fees when a party fails to comply with a parenting plan in bad faith. However, because we affirm the superior court's finding that Winters did not act in bad faith, we do not award Ingersoll attorney fees.

Winters argues that she is entitled to attorney's fees under RCW 26.09.160(2) and RAP 18.1, which allows us to award attorney's fees to a party entitled to attorney's fees by contract or statute. Because we affirm the superior court's orders on contempt, in which Winters was awarded attorney fees below, we award attorney fees to Winters for addressing Ingersoll's appeal of the contempt hearing orders. However, RCW 26.09.160 does not entitle Winters to attorney fees for the appeal of the superior court's order relinquishing jurisdiction.

We affirm the superior court's orders on contempt, but we reverse the superior court's order relinquishing jurisdiction to Alaska. We remand for further proceedings consistent with this opinion.

Lee, A.C.J.

We concur:

Worswick, J.

Cruser, J.